[No. A023234. Sixth Dist. Jan. 15, 1985.]

FORD MOTOR CREDIT COMPANY, Plaintiff and Appellant, v.
GEORGE M. PRICE et al., Defendants and Respondents.

COUNSEL

David F. N. Schachter and Popelka, Allard, McCowan & Jones for Plaintiff and Appellant.

S. Jack Chevlen and Tanenbaum & Chevlen for Defendants and Respondents.

OPINION

PANELLI, P. J.—Plaintiff Ford Motor Credit Company (Ford) appeals from a judgment entered by the trial court in favor of defendants George M. Price and Antech Plastics, Inc. (respondents) in its action for a deficiency judgment. The sole issue on appeal is whether the public notice provisions of section 9504, subdivision (3), of the California Uniform Commercial Code[1] are mandatory or permissive. For reasons stated below, we conclude that these provisions are mandatory. Therefore, due to Ford's violation thereof, it was not entitled to a deficiency judgment.

*Facts*

The relevant facts are as follows:

In April 1980, respondents, pursuant to a finance agreement, purchased milling equipment from a seller who immediately assigned its contractual

---

[1]Unless otherwise indicated, all statutory references are to the California Uniform Commercial Code.

rights to Ford. Subsequently, in October 1981, respondents entered into a lease-option with Ford for the acquisition of other industrial machinery. In both transactions, Ford was given a security interest in the machinery as collateral for repayment of the total financed amount of $158,990.87. Respondents defaulted as to both agreements in June 1982, and on December 2, 1982, Ford obtained a writ of possession by stipulation. Shortly thereafter, Ford repossessed the equipment. Having scheduled a public sale of the collateral in the City and County of San Francisco, Ford notified respondents of the impending sale as required by section 9504, subdivision (3).[2] Ford did not, however, publish notice of the sale in the County of San Francisco[3] as required by that same statute; instead, notice was published in Santa Clara County. The sale was held as scheduled in San Francisco, at which time Ford bid and purchased the machinery for a total of $82,801, leaving a deficiency of approximately $80,000. Ford was the sole bidder at

---

[2]Section 9504, subdivision (3), provides as follows: "A sale or lease of collateral may be as a unit or in parcels, at wholesale or retail and at any time and place and on any terms, provided the secured party acts in good faith and in a commercially reasonable manner. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, the secured party must give to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale, and to any other person who has a security interest in the collateral and who has filed with the secured party a written request for notice giving his address (before that secured party sends his notification to the debtor or before debtor's renunciation of his rights), a notice in writing of the time and place of any public sale or of the time on or after which any private sale or other intended disposition is to be made. Such notice must be delivered personally or be deposited in the United States mail postage prepaid addressed to the debtor at his address as set forth in the financing statement or as set forth in the security agreement or at such other address as may have been furnished to the secured party in writing for this purpose, or, if no address has been so set forth or furnished, at his last known address, and to any other secured party at the address set forth in his request for notice, at least five days before the date fixed for any public sale or before the day on or after which any private sale or other disposition is to be made. *Notice of the time and place of a public sale shall also be given at least five days before the date of sale by publication once in a newspaper of general circulation published in the county in which the sale is to be held.* Any public sale shall be held in the county or place specified in the security agreement, or if no county or place is specified in the security agreement, in the county in which the collateral or any part thereof is located or in the county in which the debtor has his residence or chief place of business, or in the county in which the secured party has his residence or a place of business if the debtor does not have a residence or chief place of business within this state. If the collateral is located outside of this state or has been removed from this state, a public sale may be held in the locality in which the collateral is located. Any public sale may be postponed from time to time by public announcement at the time and place last scheduled for the sale. The secured party may buy at any public sale and if the collateral is customarily sold in a recognized market or is the subject of widely or regularly distributed standard price quotations he may buy at private sale. Any sale of which notice is delivered or mailed and published as herein provided and which is held as herein provided is a public sale." (Italics added.)

[3]San Francisco is unique in that its city and county borders are exactly coterminous; hence, the correct title is: "The City and County of San Francisco." For purposes of clarity, however, we refer to the county as opposed to the single entity of city and county.

the sale and only one other prospective buyer appeared. After the sale, Ford sought a judgment against respondents for the deficiency.

At the commencement of the trial on April 15, 1983, the trial court granted judgment in favor of respondents based on the undisputed fact that notice had not been published in the county where the sale was held as mandated by section 9504, subdivision (3). Because the trial court determined that the public notice provisions of section 9504, subdivision (3), are mandatory, the court denied Ford's request to present evidence to show that Ford had acted in good faith, that the sale was held in a commercially reasonable manner, and that the objectives of the statute had been met by substantial compliance. The trial court also granted reasonable attorney fees to respondents based on Civil Code section 1717.[4] Judgment of dismissal was entered on May 13, 1983, and Ford's motion for a new trial was subsequently denied. This appeal followed. In their brief, respondents have requested reasonable attorney fees on appeal, to be determined by the trial court. It should be noted that Ford does not contest this issue.

*Discussion*

■ Ford's contentions can be summarized as follows: (1) that the public notice requirements of section 9504, subdivision (3), are not mandatory, and (2) that given the fact that section 1102[5] provides for a liberal construction of the provisions of the Commercial Code, Ford should have been allowed to present evidence to show substantial compliance with the requirements of the statute.

The legal issue raised is one of first impression in California. Furthermore, since the language of the California statute is unique,[6] there is no case on point from any other jurisdiction. In order to determine whether the provision in question should be given a mandatory or permissive effect, "the court, as in all cases of statutory construction and interpretation, must ascertain the legislative intent. In the absence of express language, the intent

---

[4]Civil Code section 1717, subdivision (a), provides in pertinent part as follows: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the prevailing party, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees . . . ."

[5]Section 1102 provides in pertinent part as follows: "(1) This code shall be liberally construed and applied to promote its underlying purposes and policies. [¶] (2) Underlying purposes and policies of this code are [¶] (a) To simplify, clarify and modernize the law governing commercial transactions; [¶] (b) To permit the continued expansion of commercial practices through custom, usage and agreement of the parties; [¶] (c) To make uniform the law among the various jurisdictions. . . ."

[6]See discussion, *infra*.

must be gathered from the terms of the statute construed as a whole, from the nature and character of the act to be done, and from the consequences which would follow the doing or failure to do the particular act at the required time." (*Pulcifer* v. *County of Alameda* (1946) 29 Cal.2d 258, 262 [175 P.2d 1].)

Though the use of the word "shall" in a statute generally imports a mandatory construction (see *Francis* v. *Superior Court* (1935) 3 Cal.2d 19, 29 [43 P.2d 300]), Ford contends that a comparison of the clauses in section 9504, subdivision (3), pertaining to notification of the debtor, with those clauses regarding notification of the general public, leads to the conclusion that "shall" should not be given a mandatory construction in the instant case. Ford argues, not unreasonably, that the Legislature's choice of the word "shall" in the clause pertaining to public notice, rather than the mandatory word "must," used in the preceding clauses regarding notice to the debtor, is evidence of the Legislature's intention to give "shall" a permissive effect. In support of this position, Ford cites recent cases which have reiterated some of the general rules regarding statutory construction: " '[I]t is presumed that every word, phrase and provision employed in a statute was intended to have some meaning and to perform some useful office . . . .' " (*Gerkin* v. *Santa Clara Valley Water Dist.* (1979) 95 Cal.App.3d 1022, 1027 [157 Cal.Rptr. 612], cert. den. 464 U.S. 915 [78 L.Ed.2d 257, 104 S.Ct. 277].) "Every word, phrase and provision in a statute must be given meaning and effect [citations], and when the Legislature has used different language in several provisions, it is presumed that it did so advertently and intended a difference in meaning. [Citations.]" (*Anthony* v. *Superior Court* (1980) 109 Cal.App.3d 346, 355 [167 Cal.Rptr. 246].)

According to Ford, the only conceivable intent of the Legislature in its use of these two different mandatory words was to reflect a different posture concerning the two requirements. Thus, since notice to the debtor is the essence of any commercially reasonable sale, it is mandatory that such notice be given. On the other hand, Ford continues, notice to the general public is "merely a fictional scheme so that competitive bidding might take place." Accordingly, Ford contends, the Legislature has indicated through its use of the word "shall," that the public notice provisions of the statute in question may be satisfied without strict compliance.

The available legislative history on this section, however, does not support Ford's position, but to the contrary, leads us to the conclusion that the language in question is, indeed, mandatory. The Uniform Commercial Code was adopted in California at the 1963 Regular Session of the Legislature, "and is a comprehensive modernization of the law governing commercial transactions. It is designed to simplify and clarify the law, and to secure

uniformity in the adopting states." (23A West's Annot. Cal. Codes (1964) Foreword, Com. Code, p. III.) It is significant to note, though, that the California Legislature chose not to adopt the specific wording of section 9-504, subdivision (3) as it appears in the Uniform Commercial Code.[7] Whereas the official text provides only for "reasonable notice," the legislation adopted in California explicitly sets out the requirements for notice both to the debtor *and* to the general public when a public sale is to be held.

We can find the reasons behind the California modifications in the Sixth Progress Report to the Legislature by the Senate Fact Finding Committee on Judiciary (1959-1961) part 1, The Uniform Commercial Code, page 426, which states the following: "The Official Text requires that 'reasonable notification of the time and place of any public sale must be given' and 'reasonable notification' of the time on or after which a private sale will be made, but does not specify either the manner in which notice must be given or the time within which it must be given. *We think both the time and manner of giving notice should be specified, otherwise every sale is open to attack. A public sale should be defined. We believe that the requirement that every aspect of the sale be done in 'a reasonably commercial' manner is too vague a requirement to be of any value and would only be an invitation to litigation.*" (Italics added.) Referring to the above recommendations, the Report on Proposed Amendments to the Uniform Commercial Code, concluded as follows: "This subsection of the Code in effect tells a secured party that he may conduct a valid foreclosure sale of the collateral if he gives 'reasonable notice' and acts in a 'commercially reasonable' manner with regard to all aspects of the sale. The California Bankers Committee believe that a secured party, when his debtor is in default, is entitled to more specific instructions as to how he may conduct a valid foreclosure sale, *otherwise every sale would be subject to subsequent challenge.* We think so too. . . ." (*Id.,* at p. 587; italics added.)

■ Were we to accept Ford's contention that the statute should be given a permissive construction and the creditor allowed to demonstrate substantial compliance with the public notice provisions thereof, we would be inviting exactly the kinds of complications which the Legislature intended to

---

[7]The official text of section 9-504, subdivision (3), of the Uniform Commercial Code provides in pertinent part as follows: "Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, *reasonable notification of the time and place of any public sale* or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor . . . ." (Italics added.)

avoid. If the Legislature rejected the "reasonable notice" provisions of the official text of the Uniform Commercial Code because it was "too vague a requirement to be of any value," how then can we adopt the standard of "substantial compliance" which Ford advocates? As noted above, it is the court's duty, in cases of statutory construction, to determine the legislative intent. In the instant case, it is clear what that intent was: to establish definitive standards so as to prevent undue litigation as to exactly what notice is required for a valid foreclosure sale.

In the instant case Ford clearly failed to comply with section 9504, subdivision (3), in that it did not publish notice of the impending public sale in the county where the sale was to be held. A prejudicial effect of this inadequate notice to respondents was that only one potential buyer other than Ford appeared at the sale and that the only bid submitted for the collateral was offered by Ford, the creditor. Even though it is obvious that the statute as adopted by the California Legislature mandates a stricter standard than section 9-504, subdivision (3), of the Official Text of the Uniform Commercial Code, it is also clear that both statutes are intended for the benefit and protection of the debtor. Common sense tells us that the larger the attendance at a public sale of collateral, the more likely it is that there will be competitive bidding. Competitive bidding helps to assure that the purchase price approximates the fair market value of the property and also prevents a creditor from exaggerating his deficiency by underbidding. In the case at bar, it is certainly reasonable to believe that had Ford published notice of the sale in the County of San Francisco rather than a county approximately 50 miles away from the location of the sale, there might have been wider attendance by the general public, and hence, more competitive bidding resulting in a smaller deficiency.

As noted by the Court of Appeal in *Atlas Thrift Co.* v. *Horan* (1972) 27 Cal.App.3d 999, 1009 [104 Cal.Rptr. 315, 59 A.L.R.3d 389], a case dealing with the failure of a creditor to give notice of a public sale to the debtor under this same statute: "The rule and requirement are simple. If the secured creditor wishes a deficiency judgment he must obey the law. If he does not obey the law, he may not have his deficiency judgment."

Accordingly, we find that the public notice requirements of section 9504, subdivision (3), are mandatory and that a creditor's failure to comply therewith, will preclude recovery of a deficiency judgment.

With regard to attorney fees, "it is established that fees, if recoverable at all—pursuant either to statute or parties' agreement—are available for services at trial and on appeal. [Citations.]" (*Serrano* v. *Unruh* (1982) 32 Cal.3d 621, 637 [186 Cal.Rptr. 754, 652 P.2d 985].) Thus, respondents,

having prevailed on appeal, are entitled to reasonable attorney fees pursuant to Civil Code section 1717.

The judgment is affirmed and remanded to the trial court to award to respondents their reasonable attorney fees on this appeal.

Agliano, J., and Brauer, J., concurred.