[No. B019979. Second Dist., Div. Four. May 18, 1987.]

C.I.T. CORPORATION, Plaintiff and Appellant, v.
ANWRIGHT CORPORATION et al., Defendants and Respondents.

**Counsel**

Sheppard, Mullin, Richter & Hampton, John D. Berchild, Jr., Jeffrey S. Turner and Fred R. Puglisi for Plaintiff and Appellant.

Walter, Finestone, Richter & Kane, Kevin P. Kane, Frederick F. Mumm, Jeff M. Novatt and Nancy R. Benveniste for Defendants and Respondents.

OPINION

COLE, J.*—When a creditor fails to give accurate notice of the place of sale of repossessed collateral as required by California Uniform Commercial Code section 9504, subdivision (3),[1] may the creditor resort to the doctrine of substantial compliance so as to preserve the right to a deficiency judgment? When a guarantor waives the right to notice of the sale, prior to the default of the debtor, is the waiver effective? We answer these questions, "no" and affirm the summary judgment from which C.I.T. Corporation (C.I.T.) appeals.

Appellant C.I.T. lent money to respondents Anwright Corporation and Fastener Specialities Company (debtors). Respondent Lloyd G. Anderson was at all times actively involved in the operation of debtors and was required to guarantee the loans. The guarantees contained waivers of many rights, including waiver of the right to require C.I.T. to proceed against the debtor before resorting to the guarantee and waiver of the right of notice to Anderson before any sale of the collateral which secured the loans. The loans went into default, and C.I.T. repossessed the secured collateral and gave notice of sale. The notice stated that the sale would take place on February 25, 1983, at 10 a.m. "at Coast Machinery, 2431 Chico Avenue, South El Monte, CA. . . ." The sale was held at the date and time specified (with a 20-minute delay to accommodate latecomers) but at a warehouse owned by Coast Machinery which was located at 9642 Rush Street, in South El Monte. Appellant describes this location as being about two blocks away from the noticed address; respondents say it was one-half mile away. Appellant's declarations established that employees were posted at the Chico Avenue address to direct prospective bidders to the Rush Street location. Appellant also points out that Anderson attended the sale, as did about 19 others. Respondents reply that in sales of the type of collateral here involved, ordinarily about 250 to 500 individuals would attend.

### The Requirements of Section 9504, Subdivision (3) Are Mandatory and Not Subject to a Doctrine of Substantial Compliance

■ Based on the foregoing facts, C.I.T. urges that the notice requirements of section 9504, subdivision (3) were substantially complied with, that the efforts taken to direct prospective bidders to the actual sale site together with the notice which was given were "more than adequate" to comply with the code and that the code requirement that the "place" of sale be given is indefinite and must be construed reasonably in light of the facts of the case.

---

*Assigned by the Chairperson of the Judicial Council.

[1]All statutory references, unless otherwise stated, are to sections of the California Uniform Commercial Code.

Hence, says appellant, it was error to grant the motion for summary judgment because, at the very least, there were contested issues of fact. We disagree.

Section 9504, subdivision (3) requires that a secured creditor, before selling secured collateral "must" (with certain here inapplicable exceptions) "give to the debtor . . . a notice in writing of the time and place of any public sale. . . ." The section also requires that notice of the time and place of a public sale shall be published at least five days before the sale in a newspaper of general circulation in the county in which the sale is to be held. In *Ford Motor Credit Co.* v. *Price* (1985) 163 Cal.App.3d 745, 747, 748 [210 Cal.Rptr. 17], the creditor, Ford, contended that the public notice requirements of the section were not mandatory and that because section 1102 provides for a liberal construction of the provisions of the California Uniform Commercial Code, it should have been allowed to present evidence of substantial compliance. In that case, the notice was published in Santa Clara County. The sale, however, while apparently conducted at the address stated, took place in the City and County of San Francisco.

The *Ford* court, speaking through Justice Panelli, rejected the contention. The court pointed to the legislative history surrounding California's adoption of the Uniform Commercial Code. The official text of section 9-504, subdivision (3) of that code only required that "reasonable notification of the time and place of any public sale" be given. The court noted the following language in the Sixth Progress Report to the Legislature by the Senate Fact Finding Committee on Judiciary (1959-1961) part 1, page 426: ". . . '*We think both the time and manner of giving notice should be specified, otherwise every sale is open to attack. A public sale should be defined. We believe that the requirement that every aspect of the sale be done in 'a reasonably commercial' manner is too vague a requirement to be of any value and would only be an invitation to litigation.*' " (*Ford Motor Credit Co.* v. *Price, supra,* 163 Cal.App.3d at p. 750.)

The *Ford* court then said, "Were we to accept Ford's contention that the statute should be given a permissive construction and the creditor allowed to demonstrate substantial compliance with the public notice provisions thereof, we would be inviting exactly the kinds of complications which the Legislature intended to avoid. If the Legislature rejected the 'reasonable notice' provisions of the official text of the Uniform Commercial Code because it was 'too vague a requirement to be of any value,' how then can we adopt the standard of 'substantial compliance' which *Ford* advocates? As noted above, it is the court's duty, in cases of statutory construction, to determine the legislative intent. In the instant case, it is clear what that intent was: to establish definitive standards so as to prevent undue litigation as to

exactly what notice is required for a valid foreclosure sale." (*Id.,* at pp. 750-751.)

We think this reasoning is quite logical and compels rejection of C.I.T.'s arguments about substantial compliance. C.I.T. asserts that since the purpose of the notice requirement is to insure adequate attendance and competitive bidding at public sales the notice is adequate when that result is accomplished. But to show that the result was accomplished, it is necessary to argue that the precautions taken to direct the potential bidders to the actual sale site, the fact that 19 bidders attended, the absence of any post-bid complaints, and the fact that respondent Anderson was present equate with compliance with section 9504, subdivision (3). To assert that these facts at least presented a triable issue of fact is to open up to litigation "exactly the kinds of complications which the Legislature intended to avoid." (*Ford Motor Credit Co.* v. *Price, supra,* 163 Cal.App.3d at pp. 750-751.)

C.I.T. also argues that the Legislature chose a somewhat vague word when it chose to use the word "place" in section 9504, subdivision (3). The argument is that because the Legislature chose to use the word "address" in setting forth the requirements for the contents of a financing statement in section 9402, subdivision (1), it must have intended that the word "place" mean something other than "address." Section 9402, subdivision (1), refers to the location of particular individuals or organizations. Thus, the address of the secured party and the mailing address of the debtor must be set forth. The place of sale may happen to be the address of an individual or organization, but it may also be some other location. It is not hard to envision that the sale of some kinds of personal property (machinery, such as is involved here, for example) might take place in an open field or location which is a describable place but which has no specific address. Also, to accept this argument of C.I.T. would open the statute to factual disputes just as would be the case if "substantial compliance" arguments were allowed to be made. We reject the argument.

Accordingly, we hold that the notice given here was defective. It follows that summary judgment properly was entered in favor of the debtors. ". . . If the secured creditor wishes a deficiency judgment he must obey the law. If he does not obey the law, he may not have his deficiency judgment." (*Atlas Thrift Co.* v. *Horan* (1972) 27 Cal.App.3d 999, 1009 [104 Cal.Rptr. 315].)[2]

---

[2]C.I.T. askes that we depart from settled California law as illustrated by *Atlas* and many other Court of Appeal decisions and hold that a creditor still may obtain a deficiency judgment, even if there is a failure to comply with section 9504, subdivision (3). Citing various cases from other jurisdictions, C.I.T. urges that we adopt the "rebuttable presumption" approach, in which a failure to comply with the requirements of section 9504, subdivision (3) creates a presumption that the collateral was worth at least the amount of debt and shifts to the secured

A Predefault Waiver of Notice of Public Sale by a Guarantor Is Void

 The notice requirements of section 9504, subdivision (3) provide that notice must be given to the "debtor."[3] Section 9501, subdivision (3)(b) states that the requirements of section 9504, subdivision (3) may not be waived. Seeking to fix liability upon Anderson nonetheless, C.I.T. points out that his guarantees waived any notice of sale of the collateral and argues that a guarantor is not a "debtor" within the meaning of the Uniform Commercial Code.

We do not agree. Two California Courts of Appeal have considered the question. (*Rutan* v. *Summit Sports, Inc.* (1985) 173 Cal.App.3d 965 [210 Cal.Rptr. 381]; *Connolly* v. *Bank of Sonoma County* (1986) 184 Cal.App.3d 1119 [229 Cal.Rptr. 396].) *Rutan,* without making its own analysis held that a guarantor is not a debtor and hence could waive the protections of section 9504, subdivision (3). *Rutan* relied upon the decision of a federal district court in Pennsylvania, which was called upon to apply California law (*United States, etc.* v. *Kurtz* (E.D. Pa. 1981) 525 F.Supp. 734, 745-746, affd. (without opinion) (3d Cir. 1982) 688 F.2d 827, cert. den. *sub. nom., Kurtz* v. *United States, etc.* (1982) 459 U.S. 991 [74 L.Ed.2d 387, 103 S.Ct. 347]). (*Rutan* v. *Summit Sports, Inc., supra,* 173 Cal.App.3d at p. 973.)

*Connolly* looked into the question in some detail. *Connolly* pointed out that the purpose of notice is to permit a debtor to bid at the sale and otherwise act to reduce his potential deficiency liability by all practical means. When the debtor defaults, the guarantor is a most likely target of the creditor. His interest is at least as great as that of the debtor in seeing that a maximum amount is realized upon the sale of collateral. The *Connolly* court was persuaded by this fact. (*Connolly* v. *Bank of Sonoma County, supra,* 84 Cal.App.3d at pp. 1124-1125.)

Since *Rutan* relied exclusively on *United States, etc.* v. *Kurtz, supra,* 525 F. Supp. 734, we look first to that case. In *Kurtz,* the guarantor of a small

---

party the burden of proving otherwise before any deficiency may be recovered (e.g., *Hoch* v. *Ellis* (Alaska 1981) 627 P.2d 1060, 1062). This approach would require us to disregard numerous other Court of Appeal decisions which have followed *Atlas* and have held that failure to comply with section 9504, subdivision (3) creates an absolute bar to a deficiency. C.I.T.'s suggested approach also would require it to have made an evidentiary showing in the trial court as to the value of the collateral. That showing would, presumably, have been rebutted by a counterevidentiary showing by respondent Anderson. C.I.T. admits it did not raise this issue in the court below. There is no indication any offer of proof was made. It is not appropriate for us to consider the issue now. Accordingly, we decline to entertain it. (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, §§ 316-323, pp. 327-334.)

[3]The section also provides that the requirement of notice may be renounced or modified by the debtor *after* default.

business administration loan maintained that he was not notified of the sale of the debtor's assets, in violation of section 9504, subdivision (3). The *Kurtz* court first noted that no California case had then determined whether a secured creditor owed any duty to a guarantor under the section. It pointed out that in other contexts California courts had extended debtors' statutory rights to guarantors. It then stated, "Additionally, we think that measurable reliance by a guarantor on the existence of collateral as an inducement to execute the guaranty, in combination with a guarantor's rights, may bring the guarantor within the class of persons that has an interest secured by the collateral. We conclude that guarantors may raise defenses based on Section 9504(3) in collection actions like this one." (*Id.,* at p. 745.) To this extent we agree with *Kurtz.*

At this point, the *Kurtz* court turned to the question whether a guarantor may waive by contract the protections of section 9504, subdivision (3). The court discussed a series of federal decisions involving small business administration loan collections where various waivers had been upheld. These cases, the court noted, found that the guaranty was unconditional and that when the guarantor consented to a release, substitution or modification of the collateral it could not fairly be said that he has relied on the collateral as an inducement to sign the guaranty. Noting that courts of this state had shown a willingness to allow guarantors to waive protection of their security interests under the Civil Code, but not considering Uniform Commercial Code problems, the court in *Kurtz* held that therefore the defendant could waive the protections of section 9504, subdivision (3). (*United States, etc.* v. *Kurtz, supra,* 525 F.Supp. at pp. 745-746.)

 Another decision, oddly enough from the same federal district as *Kurtz,* explicitly disagrees with the *Kurtz* holding concerning waiver. The case is *Ford Motor Credit Co.* v. *Lototsky* (E.D. Pa. 1982) 549 F.Supp. 996. There the court said: "From the conclusion that a guarantor is a debtor within the meaning of Article Nine [of the Uniform Commercial Code] it would seem *a fortiori* that a guarantor is precluded from waiving the commercial reasonableness defense by virtue of Section 9501(c). [Fn. omitted.] [The section referred to is virtually the same as section 9501, subdivision (3)(b) of the California Uniform Commercial Code.] Nevertheless, various courts have taken the position that this defense is subject to waiver as under the common law. [Citing *Kurtz* and other cases; citations, and comment thereon, omitted.] Other courts have not been amenable to this view and have endorsed the opposite conclusion. [Citations, and comment thereon, omitted.] With all due respect to those courts which have adopted the former position allowing waiver, . . . the reasons heretofore advanced to support the conclusion that guarantors are debtors under section 9504 are equally apposite to the waiver issue: that is, the regulatory scheme of the

Code regarding disposition of collateral after default established a policy which must include guarantors to function rationally and, more importantly, cannot be nullified by prior agreement. [Fn. omitted.] This position is consistent with the general anti-waiver provision contained in section 1102 ... which proscribes disclaimers of the obligations of good faith, diligence, reasonableness and care. [Citation.]" (*Ford Motor Credit Co.* v. *Lototsky, supra,* 549 F. Supp. 996, 1004-1005.) This rather extended quotation from *Lototsky* expresses our views.

*Connolly* v. *Bank of Sonoma County, supra,* 184 Cal.App.3d 1119, 1125, similarly, explicitly declined to follow the holding of *Rutan* v. *Summit Sports, Inc., supra,* 173 Cal.App.3d 965. We fully agree with the rationale and holding in *Connolly* and we, too, respectfully decline to follow the holding of *Rutan.*

Accordingly, we hold that Anderson's predefault waiver of rights granted to him by section 9504, subdivision (3) were void and that summary judgment was properly granted.

### DISPOSITION

The judgment is affirmed. Respondents to recover their costs on appeal.

Kingsley, Acting P. J., and McClosky, J., concurred.

A petition for a rehearing was denied June 5, 1987, and on June 17, 1987, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied August 13, 1987. Kaufman, J., was of the opinion that the petition should be granted.