[No. H001979. Sixth Dist. Dec. 22, 1987.]

SERGE L. BACKES et al., Respondents and Respondents, v.
VILLAGE CORNER, INC., et al., Defendants and Appellants.

COUNSEL

Larry J. Lichtenegger for Defendants and Appellants.

Ronald A. Parravano for Plaintiffs and Respondents.

OPINION

CAPACCIOLI, J.—

## INTRODUCTION

Respondents (the secured parties) sold restaurant equipment to appellants (the debtors) in exchange for a promissory note and retained a security interest in the equipment. The debtors defaulted on the note. Two months later, without giving notice to the debtors, the secured parties privately sold the collateral and filed this action to collect the deficiency. Sitting without a jury, the superior court entered judgment for the secured parties. The court found that the secured parties' failure to give notice was excused because the collateral "threaten[ed] to decline speedily in value." (Cal. U. Com. Code, § 9504, subd. (3).) However, the court erroneously and without explanation disregarded the undisputed two-month period during which notice could have been given. Because the evidence does not support the judgment and because the court erred in applying the California Uniform Commercial Code, we reverse.

## FACTS

The debtors, Village Corner, Inc., Robert Carlisle, Ruth Ann Carlisle, Terry Martin, and Julie K. Martin, are the former owners of the Village Corner Restaurant in Carmel. The secured parties, Serge L. Backes and Susan Backes, sold the restaurant to the debtors in July 1984.[1] As part of the

---

[1] John Waldroup, who is not a party to this action, owned the premises on which the restaurant was located and rented the premises to the debtors.

transaction, the secured parties also sold the restaurant's furniture, fixtures, and equipment in exchange for the corporation's $120,000 promissory note.[2]

The restaurant did not succeed, and the debtors closed it between December 17 and 19 and stopped paying rent. The landlord commenced a wrongful detainer action on December 20. The debtors did not answer the complaint, and the court entered a default judgment for the landlord. The landlord thus acquired the right to regain possession of the premises, but he did not make any effort to do so for several months.

At least by February 1, 1985, the defendants had also defaulted on the promissory note. On March 25, the secured parties filed the complaint in this action. In their complaint, the plaintiffs sought payment under the promissory note and possession of the collateral. On March 29, two months after the debtors had defaulted on the note, the landlord took possession of the premises and agreed to lease the property to a new tenant. The new tenant took possession two days later, on April 1. That same day, without notice to the debtors, the plaintiffs sold most of the collateral to the new tenant for $17,000. The plaintiffs sold additional collateral over the next few days for about $2,000, also without notice.

■ After the debtors had learned of the sale from a third party, the secured parties served a purported "notice" of the sale that had already occurred, apparently in an attempt to cure their earlier omission.[3]

## DISCUSSION

■ Under California Uniform Commercial Code section 9504, subdivision (3), a secured party must give notice to the debtor before selling collateral. A secured party who fails to give notice loses his conditional right to

---

[2] Village Corner, a corporation, signed the promissory note through its officers, Martin and Carlisle (two of the debtors). The individual debtors signed both a guarantee of the corporation's obligations and the security agreement. At trial, the secured parties argued unsuccessfully that the debtors were not entitled to notice because they were merely guarantors and had not signed the promissory note as individuals. The trial court found to the contrary that "[d]efendants are both debtors and guarantors and thus entitled to notice . . . ." (See *C.I.T. Corp.* v. *Anwright Corp.* (1987) 191 Cal.App.3d 1420, 1426-1427 [237 Cal.Rptr. 108]; *Connolly* v. *Bank of Sonoma County* (1986) 184 Cal.App.3d 1119, 1122-1127 [229 Cal.Rptr. 396]; *Valinda Builders, Inc.* v. *Bissner* (1964) 230 Cal.App.2d 106, 107-111 [40 Cal.Rptr. 735].)

[3] The secured parties wisely do not argue that the retroactive "notice" was valid. It was not. (See Cal. U. Com. Code, § 9504, subd. (3), stating that notice shall be given "at least five days *before*" the date of sale. [Italics added.])

obtain a deficiency judgment. (See *Atlas Thrift Co.* v. *Horan* (1972) 27 Cal.App.3d 999, 1009 [104 Cal.Rptr. 315, 59 A.L.R.3d 389]; see also *Connolly* v. *Bank of Sonoma County* (1986) 184 Cal.App.3d 1119, 1122 [229 Cal.Rptr. 396]; *Rutan* v. *Summit Sports Inc.* (1985) 173 Cal.App.3d 965, 971-972 [219 Cal.Rptr. 381]; *Ford Motor Credit Co.* v. *Price* (1985) 163 Cal.App.3d 745, 751 [210 Cal.Rptr. 17]; *Western Decor & Furnishings Industries, Inc.* v. *Bank of America* (1979) 91 Cal.App.3d 293, 306-308 [154 Cal.Rptr. 287]; *J. T. Jenkins Co.* v. *Kennedy* (1975) 45 Cal.App.3d 474, 481 [119 Cal.Rptr. 578]; *Barber* v. *LeRoy* (1974) 40 Cal.App.3d 336, 341 [115 Cal.Rptr. 272].) ▮ This case falls squarely within the rule. Having failed to take advantage of a lengthy period during which notice could have been given, the secured parties found themselves at the last minute with an emergency of their own making. By opting to sell the collateral without notice, the secured parties in effect elected to forego any deficiency.

There are four exceptions to the notice requirement. Notice is not required if (1) the collateral is "perishable," (2) the collateral "threatens to decline speedily in value," (3) the collateral "is of a type customarily sold on a recognized market," or (4) if the debtor has waived notice in a writing signed after default. (Cal. U. Com. Code, § 9504, subd. (3).) The trial court, accepting the secured parties' argument, relied on the second excuse to hold that notice was not necessary. The argument follows: On March 29, when the landlord regained exclusive possession of the restaurant premises, the landlord had the right to remove the collateral. At that point, the secured party had only two options: to sell the collateral to the new tenant for whatever the new tenant offered, or to remove the collateral and sell it for a possibly lesser amount. At that point, the secured parties were confronted with a take-it-or-leave-it proposition. Because the new tenant planned to move in on April 1 there was insufficient time for notice.[4] Thus, the argument concludes, the property threatened to decline speedily in value.

The obvious flaw in this argument is that it disregards the preceding two-month period during which the secured parties failed to give notice.[5] A

---

[4] The trial court apparently assigned no weight to the testimony of Mr. Backes (one of the secured parties) that the reason he did not give notice was his ignorance of the legal requirement. Although this testimony tends to undercut the trial court's ruling, we will not reweigh the evidence on this point. We reverse on other grounds.

[5] There is another flaw in respondents' argument. The testimony was that the collateral, sold in place to someone who intended to operate a restaurant, would have been worth approximately $100,000. Removed from the premises, the collateral would have been worth between $25,000 and scrap value. The secured parties' asserted excuse for selling the collateral without notice was to seize a fleeting opportunity to achieve the higher, in-place value. The facts, however, do not support the argument. The secured parties actually sold the property

requirement of notice, by its very nature, obliges the person who must give notice to plan ahead. The secured party cannot simply procrastinate until there is no more time, and then claim the excuse of emergency. In this case, the debtors were in default at least by February, two months before the sale. During this period the secured parties could easily have satisfied the statutory requirement of five days' notice. (Cal. U. Com. Code, § 9504, subd. (3).) Because there was ample time for notice, the evidence cannot support the trial court's conclusion that the property threatened to decline speedily in value.

This is the unanimous conclusion of courts that have interpreted Uniform Commercial Code section 9-504(3) under similar circumstances. The cases unambiguously confirm the rule that, when there is time for notice, notice must be given. A lengthy period of time for notice is simply inconsistent with a claim that the collateral "threatens to decline speedily in value." (See, e.g., *Rock Rapids State Bank* v. *Gray* (Iowa 1985) 366 N.W.2d 570, 574 [21 days sufficient as a matter of law]; *State Bank of Towner* v. *Hansen* (N.D. 1981) 302 N.W.2d 760, 765 [18 to 20 days sufficient as a matter of law]; *Stensel* v. *Stensel* (1978) 63 Ill.App.3d 639 [380 N.E.2d 526, 528, 11 A.L.R.4th 1054] [several months sufficient as a matter of law]; *United States* v. *Mid-States Sales Company* (D.Neb. 1971) 336 F.Supp. 1099, 1013 [two weeks sufficient as a matter of law].)

The case at bar is very similar to *Rock Rapids State Bank* v. *Gray, supra,* 366 N.W.2d 570 (hereinafter *Gray*). *Gray,* like this case, involved a sale of restaurant equipment on rented premises after prolonged delay without notice to the debtor, and an argument by the secured party that the collateral "threaten[ed] to decline speedily in value." As in the case at bar, the trial court in *Gray* "reasoned that the fact the premises were rented presented the [secured party] with a rigid deadline over which it had no control." (*Id.* at p. 573.) The Iowa Supreme Court disagreed: "[t]he problem with this finding . . . is that the record does not show that a deadline existed. . . . Although the evidence established that the [debtors] were in default on rent, no evidence was adduced to show that the landlord had done anything to terminate the tenancy. Because a restaurant business had been located on the premises for more than forty years, the landlord may well have been as much interested as the bank in having the equipment sold in place. Moreover, the bank took two weeks to make the equipment presentable for sale, and it was not sold until twenty-one days after the [debtors] turned it over

---

for only $19,000, well within the lower range of values that the quick sale purportedly was intended to avoid.

to the bank. This period provided ample time for notice of the intended sale to be given to the [debtors]." (*Id.* at p. 573.)

To be sure, the landlord in this case filed a wrongful detainer action in December and regained the right to exclusive possession. It was not until March 30, however, that the landlord made an effort to exercise his right.[6] Since the debtors were in default on the promissory note at least by February, the secured parties had at least two months for notice—three times as long as the secured parties in *Gray*. The court in *Gray* held as a matter of law that a 21-day period during which notice could have been given precluded the finding that the collateral "threaten[ed] to decline speedily in value." (*Gray, supra,* 366 N.W.2d at p. 573.) A period of two months does not even present a close question.

The secured parties have made absolutely no effort, whether at trial or on appeal, to excuse their failure to give notice during the two months preceding the last-minute sale. There was no legal obstacle to giving notice, since the secured parties were entitled to give notice immediately upon default. (Cal. U. Com. Code., § 9504, subd. (1).) Nor were the secured parties required to repossess the collateral before giving notice. (*Buran Equipment Co.* v. *H & C Investment Co.* (1983) 142 Cal.App.3d 338, 342 [190 Cal.Rptr. 878]; *Sierra Financial Corp.* v. *Brooks-Farrer Co.* (1971) 15 Cal.App.3d 698, 703-704 [93 Cal.Rptr. 422].) As a practical matter, notice would not have deprived the secured parties of the opportunity to seek out the most favorable transaction. When a secured party intends to proceed by private sale, as in this case, the code permits a flexible form of notice which allows the secured party to hold the property on the market for a period of time. Specifically, the notice of a private sale may simply recite the date "on or after" which the collateral will be sold. (Cal. U. Com. Code, § 9504, subd. (3).)

Notice to the debtor is the mechanism that the Legislature and the drafters of the Uniform Commercial Code chose to ensure that sales of collateral are conducted in a commercially reasonable fashion. Notice serves this purpose by giving the debtor an opportunity to monitor the sale to ensure its commercial reasonableness. (See *Rutan* v. *Summit Sports, Inc.,*

---

[6] Our reasoning is in no way inconsistent with the trial court's finding about the status of the lease: "Defendants had not paid rent on the leasehold premises since September 1984; the landlord had filed an unlawful detainer action against defendants and the landlord could take possession of the premises any time after January 1985." As the landlord testified at trial, "I was patient for three months in giving them a chance to work it out, and after 90 days it became apparent it was all talk and nothing was going to happen."

*supra,* 173 Cal.App.3d 965, 972; *Buran Equipment Co.* v. *H & C Investment Co., supra,* 142 Cal.App.3d 338, 341.) The right to a deficiency judgment is conditional and depends on strict compliance with the statutory requirements. As the court stated in *Atlas Thrift Co.* v. *Horan, supra,* 27 Cal.App.3d 999, 1009, "[t]he rule and requirement are simple. If the secured creditor wishes a deficiency judgment he must obey the law. If he does not obey the law, he may not have his deficiency judgment." (See also *Rutan* v. *Summit Sports, Inc., supra,* 173 Cal.App.3d 965, 971-972; *Ford Motor Credit Co.* v. *Price, supra,* 163 Cal.App.3d 745, 751; *Western Decor & Furnishings Industries, Inc.* v. *Bank of America, supra,* 91 Cal.App.3d 293, 306-308; *J. T. Jenkins Co.* v. *Kennedy, supra,* 45 Cal.App.3d 474, 481; *Barber* v. *LeRoy, supra,* 40 Cal.App.3d 336, 341.)

■ One of the court's findings suggests that the court might have believed that the debtors waived their right to notice. Referring to the two-month period between default and sale, the court stated that "[d]efendants had an ample opportunity to do whatever they wanted to do with the equipment (collateral) in the leasehold business establishment and nothing was done." This finding, which we assume to be factually correct, cannot support the legal conclusion that the debtors waived notice. The California Uniform Commercial Code provides that notice can be waived only in a writing "signed after default." (Cal. U. Com. Code, § 9504.) Thus, to the extent that the court found a waiver based upon the debtors' inaction, the court erred.[7] It was the secured parties who were required to act.

■ Because the evidence cannot support the finding that the collateral "threaten[ed] to decline speedily in value," and because no other exception excuses the secured parties' failure to give notice, we reverse.[8]

Since the secured parties failed to give notice, we have no occasion to decide whether the sale was commercially reasonable. ■ Commercial reasonableness is a statutory requirement for all sales of collateral (Cal. U. Com. Code, § 9504, subd. (3)); it is not a substitute for compliance with the mandatory notice provisions. The notice requirement is designed to ensure

---

[7]The parties disagree on the question whether the trial court's language constitutes a finding of waiver. The debtors argue that the court found a waiver, but erroneously. The secured parties argue that the court did not find a waiver.

[8]In light of the ground on which we reverse, we do not reach appellants' contention that the secured parties lost the right to recover the deficiency by failing to plead notice in their complaint. (See, e.g., *Barber* v. *LeRoy* (1974) 40 Cal.App.3d 336, 344 [115 Cal.Rptr. 272], in which the court states that a secured party must plead compliance with the code in order to state a cause of action.) The argument is problematical because the secured parties filed their complaint before selling the property.

commercial reasonableness by preventing secret or collusive sales of collateral. If retrospective arguments about commercial reasonableness could excuse a lack of notice, notice would become a thing of the past.

## DISPOSITION

The judgment is reversed. The trial court is directed to enter judgment for appellants, including costs at trial and on appeal.

Agliano, P. J., concurred.

**BRAUER, J.**—I join in the opinion of the court because California law is well entrenched that, in the absence of statutory excuse, failure to give notice precludes grant of a deficiency judgment.[1] Nevertheless I must give voice to some concern as this law can result in injustice and does so in this case, assuming a money judgment against the debtor would be collectible.

The lead opinion correctly points out that notice of a private sale may simply recite the date "on or after" which the collateral will be sold (Cal. U. Com. Code, § 9504, subd. (3)). But unless I were conversant with the intricacies of the statute, it would not occur to me to give notice of private sale before I had found a purchaser; and if it would not occur to me it is not likely to have occurred to an unsophisticated and then unrepresented chef like our secured party. Once the purchaser-lessee was procured, there was no time for notice. The evidence was uncontradicted that the successor came to a tentative understanding with the landlord and the security holder on March 29 and took possession on April 1. Clearly, as the trial judge found, at that point the collateral "threatened to decline speedily in value." (Cal. U. Com. Code, § 9504, subd. (3).) All parties are agreed that the equipment was worth more in place to a restaurant operator than to anyone else.

And it is unlikely that the debtors were prejudiced by the failure to give notice. They testified that in the three months' period after they closed the business, they made unsuccessful efforts to find a new tenant. What difference would the statutory five-day notice have made?

---

[1] The decisions compel this result although the statute (Cal. U. Com. Code, § 9504) is silent.

The facts in this case argue in favor of approaches different from California's, adopted by a number of other states: the so-called Arkansas rule which creates a rebuttable presumption when notice was omitted that the collateral was worth the amount of the outstanding debt and the Michigan rule that the debtor is entitled to a setoff against the deficiency in the amount of such damages as he can prove. (See discussion and cases collected in White & Summers, Uniform Commercial Code (2d ed. 1980) § 26-15, pp. 1127-1135.) The middle ground occupied by the Arkansas rule strikes me (and White & Summers) as the most equitable.

A petition for a rehearing was denied January 13, 1988, and respondents' petition for review by the Supreme Court was denied March 2, 1988.