[No. B037580. Second Dist., Div. Seven. Sept. 20, 1991.]

PWS, INC., Plaintiff, Cross-defendant and Appellant, v.
JOHN BAN et al., Defendants, Cross-complainants and Appellants.

## COUNSEL

Maynard J. Klein for Plaintiff, Cross-defendant and Appellant.

Kim & Bang and Steven C. Kim for Defendants, Cross-complainants and Appellants.

## OPINION

**JOHNSON, J.**—The appeal by PWS, Inc., raises a question of first impression. Where a creditor purchases the collateral after the debtor's default does the creditor's failure to comply with the notice requirement of California Uniform Commercial Code section 9504 preclude its recovery of a deficiency judgment if the creditor, upon realizing its mistake, conducts a new sale after giving proper notice? We conclude in the absence of a showing of prejudice to the debtor the creditor may obtain a deficiency judgment based on the second sale. Therefore, we reverse the judgment against PWS, Inc.

The cross-appeal by the Bans argues the judgment in favor of PWS, Inc., on the Bans' cross-complaint for rescission of the conditional sales contract is not supported by substantial evidence. We affirm this judgment.

## FACTS AND PROCEEDINGS BELOW

This matter was tried to the court and the parties agree on the following basic facts.

The Bans purchased a laundromat business from PWS, Inc. (PWS) for approximately $300,000. The parties entered into a conditional sale contract under which the laundry equipment, fixtures and certain improvements were security for the balance due on the contract. After about 22 months, the Bans failed to make the required monthly payments.

Following the Bans' default on their payments under the contract, PWS repossessed the collateral and noticed a public sale pursuant to California Uniform Commercial Code section 9504.[1] The notice itself complied with all the requirements of section 9504, subdivision (3). The problem was this: the notice stated the sale would take place on July 23 but it was conducted a day early, on July 22. PWS purchased the collateral on July 22 for $120,000. When PWS discovered its error, it attempted to rectify matters by holding a new sale. Once more PWS gave notice of the sale in conformity with section 9504 and, on the date set for the sale, again purchased the collateral for $120,000.

PWS brought suit against the Bans for the balance due on the contract after deducting the $120,000 it paid for the collateral. The Bans cross-complained for rescission of the contract based on fraud, misrepresentation, mistake and failure of consideration. The trial court ruled against the claims of each party, granting judgment to the Bans on PWS's suit for the balance due on the contract and granting judgment to PWS on the Bans' suit to rescind the contract. Both parties appeal.

## DISCUSSION

I. WHERE THE DEBTOR DEFAULTS ON A CONDITIONAL SALES CONTRACT AND THE CREDITOR PURCHASES THE COLLATERAL AT A FORECLOSURE SALE UNDER CALIFORNIA UNIFORM COMMERCIAL CODE SECTION 9504, BUT THE SALE IS IMPROPERLY NOTICED, THE CREDITOR IS NOT BARRED FROM OBTAINING A DEFICIENCY JUDGMENT IF IT REPURCHASES THE COLLATERAL AT A NEW, PROPERLY NOTICED SALE.

The parties agree a secured creditor may sue the debtor for a deficiency judgment after a foreclosure sale under section 9504 *only* if the

---

[1] Unless otherwise stated, all future references are to the California Uniform Commercial Code.

creditor has strictly complied with the terms of that statute in conducing the sale. (See, e.g., *Crocker Nat. Bank* v. *Emerald* (1990) 221 Cal.App.3d 852, 861 [270 Cal.Rptr. 699]; *Ford Motor Credit Co.* v. *Price* (1985) 163 Cal.App.3d 745, 751 [210 Cal.Rptr. 17].) At the time of the two PWS sales, section 9504, subdivision (3) provided in relevant part: "A sale or lease of collateral may be as a unit or in parcels, at wholesale or retail and at any time and place and on any terms, provided the secured party acts in good faith and in a commercially reasonable manner. . . . [T]he secured party must give to the debtor, . . . a notice in writing of the time and place of any public sale or of the time on or after which any private sale or other intended disposition is to be made. Such notice must be delivered personally or be deposited in the United States mail postage prepaid addressed to the debtor at his address as set forth in the financing statement or as set forth in the security agreement or at such other address as may have been furnished to the secured party in writing for this purpose, . . . at least five days before the date fixed for any public sale or before the day on or after which any private sale or other disposition is to be made. Notice of the time and place of a public sale shall also be given at least five days before the date of sale by publication once in a newspaper of general circulation published in the county in which the sale is to be held. . . . The secured party may buy at any public sale and if the collateral is customarily sold in a recognized market or is the subject of widely or regularly distributed standard price quotations he may buy at private sale. Any sale of which notice is delivered or mailed and published as herein provided and which is held as herein provided is a public sale."

It is undisputed PWS's first sale would not support a deficiency judgment because the notice stated the sale would be held on July 23 but the sale was actually conducted on July 22. While there are numerous cases in California and other jurisdictions holding a creditor's failure to comply with the notice provisions of section 9504 (U.Com.Code, § 9-504) precludes recovery of a deficiency judgment, all of these cases involved situations where the creditor elected to stand on the sale and argued its failure to strictly comply with the notice requirements should be excused. (See, e.g., *C. I. T. Corp.* v. *Anwright Corp.* (1987) 191 Cal.App.3d 1420, 1422 [237 Cal.Rptr. 108] [sale actually conducted a few blocks from address given in notice]; *Ford Motor Credit Co.* v. *Price, supra*, 163 Cal.App.3d at p. 751 [notice published in a newspaper in Santa Clara County should have been published in San Francisco County].) No case has involved the situation where the creditor said, in effect, "Hold everything, we made a mistake. Let's do the whole thing over."

The Bans assert three reasons why PWS cannot unwind the first transaction and "do the whole thing over." They contend the first sale discharged

PWS's security interest in the property. Therefore, the second sale was an attempt to foreclose on a nonexistent security interest. They next argue allowing the creditor to obtain a deficiency judgment after "curing" its prior defective sale would emasculate the purpose and intent of section 9504. Finally, they contend allowing the creditor to cure a defective foreclosure sale prejudices the defaulting debtor by restoring the creditor's right to a deficiency judgment after that right had been lost. We disagree with these contentions for the reasons set forth below.

Where, as here, the secured creditor has noticed the sale, purchased the collateral and not yet disposed of the collateral to some third party, we see no reason why the creditor cannot treat the proceedings as null and void and start over. It may be stretching things a bit to term this conduct a rescission but the analogy is apt. A contract may be rescinded if all the parties to it consent. (Civ. Code, § 1689, subd. (a).) ■ The effect of a rescission is to void the contract *ab initio*. (*Long* v. *Newlin* (1956) 144 Cal.App.2d 509, 512 [301 P.2d 271].) The question is not, as the Bans put it, whether a rescission can "recreate an extinguished security interest." Rescission does not "recreate" something that was destroyed; rather it returns the parties to the point where they were before entering into the contract.

■ In arguing the first sale discharged PWS's security interest in the collateral, the Bans cite section 9504, subdivision (4) which provided, at the time of the sales: "When collateral is disposed of by a secured party after default, the disposition transfers to a purchaser for value all of the debtor's rights therein, discharges the security interest under which it is made and any security interest or lien subordinate thereto. The purchaser takes free of all such rights and interest even though the secured party fails to comply with the requirements of this chapter or of any judicial proceedings. [¶] (a) In the case of a public sale, if the purchaser has no knowledge of any defects in the sale and if he does not buy in collusion with the secured party, other bidders or the person conducting the sale; . . ."

We note, however, section 9504, subdivision (4)(a) only applies in the case of a public sale "if the purchaser has no knowledge of any defects in the sale . . . ." In the present case the purchaser of the collateral, PWS, was also the seller and the party who gave notice and conducted the sale. It cannot be said PWS had no knowledge of the defect in the sale. If the Bans had sued PWS to set aside the first sale, PWS could not have relied on section 9504, subdivision (4) as a defense. And, if the sale had been set aside for failure to comply with the notice provisions, it follows the parties would be returned to their positions before the sale. We find nothing in section 9504 which would prevent PWS, under those circumstances, from noticing a

new sale and proceeding in accordance with section 9504, including recovering any deficiency.

Upholding PWS's right to a deficiency judgment does not unfairly prejudice the Bans under the facts of this case.

■ The purpose of requiring notice to the debtor and the public is to allow the debtor and others to be present to observe and bid at the sale. (*C. I. T. Corp.* v. *Anwright Corp., supra,* 191 Cal.App.3d at p. 1424; *Ford Motor Credit Co.* v. *Price, supra,* 163 Cal.App.3d at p. 750.) ■ The first sale, conducted a day ahead of the date in the notice, clearly prejudiced the Bans. But the second sale was conducted in strict compliance with the notice and had the effect of undoing the prejudice to the Bans that resulted from the first sale. Furthermore, it does not appear any estoppel arose from the first sale. The Bans do not claim they or any third party relied on the first sale or that they even knew it took place on the wrong day until they were told by PWS. The absence of prejudice to the Bans is a critical factor in our holding PWS may obtain a deficiency judgment based on the second sale. Our holding might well be different if, for example, the Bans had shown they had a buyer ready, willing and able to purchase the laundry equipment for $160,000 on July 23 but the buyer was no longer interested by the time of the second sale three months later.

The Bans argue a rule allowing the creditor to re-notice a defective sale prejudices the debtor in two ways. First, it would allow the creditor to re-notice and re-notice ad infinitum until it gets the sale right while in the meantime the collateral is decreasing in value. Second, creditors will always purchase the collateral so that if there has been a defect in the sale they can re-notice and resell the collateral and maintain their right to seek a deficiency judgment. We believe the statutory requirements of good faith and commercial reasonableness in the sale answer both these objections. (See § 9504, subd. (3), quoted *supra.*) If the court should find the resale value of the collateral substantially diminished during the time the creditor was making ineffective attempts to comply with section 9504 the court could refuse to award a deficiency judgment on the ground the sale was not in good faith or commercially reasonable. As to the objection creditors will always purchase the collateral themselves, they generally do so anyway. The statute specifically permits this as long as the purchase price is commercially reasonable. On retrial of PWS's suit against the Bans, the Bans are free to put in issue the good faith and commercial reasonableness of the second sale.

Rather than prejudicing debtors, we believe our decision will have the effect of encouraging good faith and fair dealing in commercial reposses-

sions. PWS could have remained silent about the mistake it made in the hope the Bans would not discover it. Or, if the Bans discovered the mistake, PWS could have tried to justify the sale on the ground the Bans were not prejudiced. While this justification would ultimately fail if challenged in court, PWS could have at least tested the Bans' resolve to pursue the matter through litigation. Instead, PWS admitted its mistake and did the only thing it could do to rectify the error. It re-noticed the sale. PWS should not suffer the same fate as a creditor which does not rectify its error or attempts to sweep it under the rug. A rule encouraging good faith and fair dealing on the part of creditors in the long run benefits debtors too.

## II. THE JUDGMENT FOR PWS ON THE BANS' CROSS-COMPLAINT FOR RESCISSION IS SUPPORTED BY SUBSTANTIAL EVIDENCE.

 After a 13-day court trial the court concluded the Bans "were provided with adequate information upon which to make a judgment as to the economic feasibility of investing in the laundry [and] there were no material misrepresentations of fact made by [PWS]." If there is substantial evidence to support these findings, then, of course, the judgment must be affirmed. (*Henry* v. *Sharma* (1984) 154 Cal.App.3d 665, 670 [201 Cal.Rptr. 478].)

 When a judgment is attacked as being unsupported by the evidence, "the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the [trier of fact]." (*Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183].) We are not interested in the Bans' characterization of the evidence but the evidence itself.

 Here, the Bans cite just two areas of evidence in support of their claim the judgment is unsupported. The Bans claim PWS knew or should have known there were insufficient parking places for a laundromat of this size and the washing machines PWS sold them were "defective."

A corporate official of PWS testified that, in his opinion, "a good ratio of parking is to have one parking space for every four washing machines." It is undisputed this laundromat had 90 washing machines. Therefore, under this formula the laundromat should have had 23 parking spaces. PWS admitted the laundromat had 16 parking spaces. However, an expert witness testified 16 parking spaces would allow the laundromat to "do well."

As to the defective washing machines, there was no evidence PWS knew they were defective when it sold them to the Bans. On the other hand, the

evidence shows the defect was in the design of the machine and that the manufacturer provided free service and repair with respect to this defect.

The Bans have failed to establish the judgment in favor of PWS on the cross-complaint was not supported by substantial evidence.

## DISPOSITION

The judgment for defendants John and Sang Ban on the complaint of PWS, Inc., is reversed. The judgment for cross-defendant PWS, Inc., on the cross-complaint of John and Sang Ban is affirmed. Each party is to bear its own costs on appeal.

Lillie, P. J., and Woods (Fred), J., concurred.

The petition of defendants, cross-complainants and appellants for review by the Supreme Court was denied December 12, 1991.