[No. B055435. Second Dist., Div. Three. Dec. 26, 1991.]

EARL OF LOVELESS, INC., Plaintiff and Respondent, v.
THOMAS E. GABELE, Defendant and Appellant.

**COUNSEL**

Joseph Di Giulio for Defendant and Appellant.

Alexander L. Mazzia, Jr., for Plaintiff and Respondent.

## OPINION

### HINZ, J.—

#### INTRODUCTION

Defendant and appellant Thomas E. Gabele (Gabele) appeals the judgment in favor of plaintiff and respondent the Earl of Loveless, Inc. (Loveless) on a promissory note.

Gabele contends Loveless failed to provide notice required by the California Uniform Commercial Code prior to the sale of collateral securing the note, precluding recovery of a deficiency judgment.

We affirm the judgment.

#### FACTUAL AND PROCEDURAL BACKGROUND

In 1976, Loveless sold a restaurant, located in the City of Carson, and its equipment to John R. Oros and Dwight C. Miller. Oros and Miller gave Loveless a promissory note secured by personal property located in the restaurant. The printed form security agreement specifically referred to notice pursuant to the California Uniform Commercial Code sections 9504 and 9505 regarding the disposition of collateral in event of default by the debtor.

In 1980, Gabele purchased the restaurant and its equipment from Miller and Oros and assumed obligations under the promissory note and security agreement to Loveless. Gabele later sold the restaurant to an individual named Mata, who agreed to assume the obligations of the note. Mata took over operation of the restaurant in December 1983 and closed it in October 1984. He paid Gabele $29,000 of the purchase price of over $90,000, before filing for bankruptcy. During the pendency of the bankruptcy, the collateral was locked inside the premises. Apparently the bankruptcy court removed the automatic stay, and the trustee abandoned the collateral, making it available to the parties about May 1985.

In 1987, Loveless filed a complaint against Gabele, Oros and Miller on the promissory note. Gabele filed an answer and cross-complaint for indemnity against Frances C. Loveless and Earl L. Loveless, sole shareholders of the Loveless corporation, the Loveless corporation, and Kay Calas, who allegedly owned or leased the property where the collateral security for the promissory note was located. Gabele alleged cross-defendants "excluded

[him] from access to said premises in order to recover use and possession of the collateral security items. . . ." and converted the secured items to their own use and then abandoned them, allowing them to remain on the premises of Calas, where they were subsequently removed by third parties and destroyed. Gabele sought damages in the amount of $35,000, the value of the collateral security in excess of the sums due on the promissory note.

At trial Frances C. Loveless testified that she took a prefab walk-in, five booths and tables, the top part of the back bar, and a cash register. She valued the cash register at $250 to $300, the back bar as $100, and each booth at $125. She also took a slicer which later Gabele sold for $1,000, giving her the check. Earl L. Loveless testified that he did not take any collateral from the premises. When Gabele asked him what he needed, he told him, " 'Very little.' " Mr. Loveless testified that he saw the restaurant equipment at Gabele's yard.

Gabele testified he never received written notice from Loveless that the promissory note was in arrears after Mata filed bankruptcy. He did not have access to the restaurant until after Earl and Fran Loveless "came in and took the stuff that they wanted out of it and also had sold some of it to a dealer." According to Gabele, they sold the kitchen equipment from the premises before Gabele had gained access. Gabele took none of the collateral, only items he had added to the restaurant. Gabele testified that he never received notice that Loveless intended to take or sell any of the collateral property.

The trial court found for Loveless, allowing Gabele a credit of $3,500. Judgment was entered in the amount of $59,309.72 plus interest and attorney's fees of $5,000.

### CONTENTIONS

Gabele contends the trial court's decision is in direct conflict with the mandate of California Uniform Commercial Code section 9504, subdivision (3), and there is no waiver of the notice requirement.

Loveless contends substantial evidence supports the judgment, including a finding of waiver, and that Gabele is estopped from complaining of lack of notice of sale.

### DISCUSSION

1. *Standard of Review*

■ The trial court's judgment is presumed correct. (*Wilson* v. *Sunshine Meat & Liquor Co.* (1983) 34 Cal.3d 554, 563 [194 Cal.Rptr. 773, 669 P.2d

9].) "In reviewing the evidence on . . . appeal all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible." (*Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183].)

2. *Section 9504, Subdivision (3)*

At the time of the removal of the collateral in 1985, section 9504 of the California Uniform Commercial Code provided, in pertinent part, as follows:

"(1) A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing. . . .

". . . . . . . . . . . . . . . . . . . . . . . . .

"(2) If the security interest secures an indebtedness, the secured party must account to the debtor for any surplus except as provided in Section 701.040 of the Code of Civil Procedure, and, unless otherwise agreed, the debtor is liable for any deficiency. . . .

"(3) A sale or lease of collateral may be as a unit or in parcels, at wholesale or retail and at any time and place and on any terms, provided the secured party acts in good faith and in a commercially reasonable manner. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, the secured party must give to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale, and to any other person who has a security interest in the collateral and who has filed with the secured party a written request for notice . . . a notice in writing of the time and place of any public sale or of the time on or after which any private sale or other intended disposition is to be made. Such notice must be delivered personally or be deposited in the United States mail postage prepaid addressed to the debtor at his address as set forth in the financing statement or as set forth in the security agreement or at such other address as may have been furnished to the secured party in writing for this purpose, or if no address has been so set forth or furnished, at his last known address . . . at least five days before the date fixed for any public sale or before the day on or after which any private sale or other disposition is to be made. . . ."

"Notice to the debtor is the mechanism that the Legislature and the drafters of the Uniform Commercial Code chose to ensure that sales of

collateral are conducted in a commercially reasonable fashion. Notice serves this purpose by giving the debtor an opportunity to monitor the sale to ensure its commercial reasonableness. The right to a deficiency judgment is conditional and depends on strict compliance with the statutory requirements. As the court stated in *Atlas Thrift Co.* v. *Horan* [1972] 27 Cal.App.3d 999, 1009 [104 Cal.Rptr. 315, 59 A.L.R.3d 389], '[t]he rule and requirement are simple. If the secured creditor wishes a deficiency judgment he must obey the law. If he does not obey the law, he may not have his deficiency judgment.' " (*Backes* v. *Village Corner, Inc.* (1987) 197 Cal.App.3d 209, 215-216 [242 Cal.Rptr. 716]; citations omitted.)

"It is well established in California that failure to comply with the notice requirement precludes the secured party from recovering a deficiency judgment against the 'debtor.' [Citations.]" (*Connolly* v. *Bank of Sonoma County* (1986) 184 Cal.App.3d 1119, 1122 [229 Cal.Rptr. 396].)

 California Uniform Commercial Code section 9501, subdivision (3)(b) prohibits waiver or variance of the notice requirements by the debtor prior to default. (*Krueger* v. *Bank of America* (1983) 145 Cal.App.3d 204, 214 [193 Cal.Rptr. 322].)

In *Atlas Thrift Co.* v. *Horan* (1972) 27 Cal.App.3d 999 [104 Cal.Rptr. 315, 59 A.L.R.3d 389], the court held, "The most natural and reasonable construction of the statutory language, in the light of the legal background, the realities of the relationships involved between secured creditors and debtors who have defaulted and their respective financial resources for engaging in litigation, all lead to the conclusion that *the right to a deficiency judgment depends on compliance with the statutory requirements concerning dispositions and notice*." (*Id.*, at p. 1009, italics in original.) The court rejected the contention that the remedy provided by section 9507, which allows the debtor to recover from the secured party any loss caused by the secured party's failure to comply with the chapter on defaults, was the debtor's exclusive remedy. (*Id.*, at p. 1005.)

 When Mata assumed the primary obligation to Loveless, Gabele remained liable on the promissory note and in his own words, "remained a guarantor of payment under the note."

Gabele, as a guarantor, was a "debtor" as defined by section 9105, subdivision (1)(d), and was entitled to the protections afforded debtors

pursuant to section 9504, subdivision (3). (*Connolly v. Bank of Sonoma County, supra*, 184 Cal.App.3d 1119, 1124-1125.)[1]

### 3. *Waiver and Estoppel*

 The California cases consistently hold that failure to strictly comply with the notice requirements precludes a deficiency judgment against the debtor. Few cases address the question of the debtor's waiver of notice after default or the applicability of the doctrine of estoppel. The code specifically requires notice to the debtor, "if he has not signed after default a statement renouncing or modifying his right to notification of sale . . . ." There are no California cases holding that the creditor was not barred from seeking a deficiency judgment for lack of strict compliance with the code on the basis of the debtor's waiver or on the doctrine of estoppel.

The court in *Canadian Community Bank v. Ascher Findley Co., supra*, 229 Cal.App.3d 1139, rejected the secured party's argument that the debtor was estopped to invoke the protections of section 9504, expressing serious doubt "whether the doctrine of estoppel may be employed offensively to absolve a secured party from his failure to comply with the strict requirements of section 9504." (*Id.*, at p. 1160.) In that case, however, the court found no substantial evidence to support an estoppel claim. (*Ibid.*)

In *Brunzell Construction Co., Inc. v. Smith* (1988) 200 Cal.App.3d 617 [246 Cal.Rptr. 182], the court recognized the "commonsense" interpretation of sections 9504 and 9505, which permits a debtor to waive those rights after default by authorizing a default judgment against him. (200 Cal.App.3d at p. 622.)

In *PWS, Inc. v. Ban* (1991) 234 Cal.App.3d 223 [285 Cal.Rptr. 598], Division 7 of the Second District held that the creditor could bring an action

---

[1]Although a debtor cannot before default waive the right to notification of sale of collateral, it has been held that a *guarantor* can waive the protections which otherwise may be afforded by section 9504, subdivision (3). (*Rutan v. Summit Sports, Inc.* (1985) 173 Cal.App.3d 965, 969, 973 [219 Cal.Rptr. 381].) In *Rutan*, the guaranty was unconditional in nature and contained express waivers of the rights to assert the borrower's defenses or rights of notice. (*Id.*, at p. 973.) The majority of the California appellate courts which have considered the question have held that a guarantor is a "debtor" for purposes of section 9504. "Like the principal obligor, the guarantor 'owes payment or other performance of the obligation secured.' (Cal. U. Com. Code, § 9105, subd. (1)(d).) Like the principal obligor, the guarantor has an interest in preventing collusive or commercially unreasonable sales of collateral, so as to minimize his liability on the obligation secured. Like the principal obligor, the guarantor requires notice of the disposition so that he may redeem the collateral, or bid at sale, or produce other bidders at sale. We perceive no policy which would argue for differential treatment, generally, of guarantors and principal obligors in this respect." (*Canadian Community Bank v. Ascher Findley Co.* (1991) 229 Cal.App.3d 1139, 1152-1153 [280 Cal.Rptr. 521].)

for deficiency judgment after improper notice because the creditor cured the defect in notice by holding a properly noticed sale, and there was no prejudice to the debtor.

Other states have acknowledged the debtor may waive his right to notice postdefault in certain circumstances. In *Burdick* v. *Tucker* (Colo.Ct.App. 1989) 780 P. 2d 34, 36, the court stated waiver "can be made only when the debtor *knowingly* and *specifically* agrees to waive his right to such notice." (Original italics.)

"[P]eaceful relinquishment of collateral by the debtor with knowledge that it will be sold does not alone support a finding of waiver." (*Rock Rapids State Bank* v. *Gray* (Iowa 1985) 366 N.W.2d 570, 574, citations omitted.)

Nevertheless, substantial evidence supports the trial court's finding of waiver in this case. (*Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362].) ■ Waiver is the intentional relinquishment of a known right, evidenced by the affirmative act of the party charged with waiver. (*Wienke* v. *Smith* (1918) 179 Cal. 220, 226 [176 P. 42]; *Jones* v. *Maria* (1920) 48 Cal.App. 171, 173 [191 P. 943].)

■ There is evidence that Gabele conferred with Loveless regarding the disposition of specific items such as the cash registers and the slicer. Indeed, Gabele undertook to sell the slicer on behalf of Loveless. There is no evidence that he was prevented from access to the collateral once Loveless was granted access by the bankruptcy court. There is some evidence that this was an emergency situation requiring fast action, excepted from the formal notice requirements, due to the short time span the parties were allowed to dispose of the collateral located inside the restaurant that was leased or sold to a third party. The contractor had started breaking up the bar and other items—i.e., the "collateral . . . threaten[ed] to decline speedily in value." (§ 9504, subd. (3).)

Although Gabele did not receive a formal written notice of disposition, it is clear that he was aware of the need to dispose of the collateral and in fact participated in its disposition. Under these circumstances compliance with the statute would have been an idle act; judgment must be affirmed.

## DISPOSITION

Judgment affirmed.

Klein, P. J., and Danielson, J., concurred.