[No. B071782. Second Dist., Div. Four. May 3, 1994.]

MAURICE OVADIA et al., Plaintiffs and Respondents, v.
ANWAR ABDULLAH et al., Defendants and Appellants.

**COUNSEL**

Simke, Chodos, Silberfeld & Anteau, David Manning Chodos and Bernice Conn for Defendants and Appellants.

Cooper & Dempsey, Michael D. Dempsey and Jan Copley for Plaintiffs and Respondents.

## OPINION

**WOODS (A. M.), P. J.**—This appeal is from a judgment that required Anwar Abdullah and Jamil Abdullah (Anwar, Jamil or appellants) to sell their stock in West Coast Laboratories, Inc., a family-owned corporation, back to the corporation pursuant to the provisions of Corporations Code section 2000.[1] Respondents are appellants' brothers, Maurice Ovadia and Naim Abdullah (Maurice, Naim or respondents), who initiated proceedings under section 2000.

West Coast Laboratories, Inc., (West Coast) is a pharmaceutical manufacturing company begun in 1967 by the parties, each of whom held 25 percent of the corporation's stock. Without here relating the various charges and countercharges that the parties have levied at each other, suffice it to say that relations between the brothers were not harmonious.

---

[1]Corporations Code section 2000 provides in relevant part: "(a) Subject to any contrary provision in the articles, in any suit for involuntary dissolution, or in any proceeding for voluntary dissolution initiated by the vote of shareholders representing only 50 percent of the voting power, the corporation, or if it does not elect to purchase, the holders of 50 percent or more of the voting power of the corporation (the 'purchasing parties') may avoid the dissolution of the corporation and the appointment of any receiver by purchasing for cash the shares owned by the plaintiffs or by the shareholders so initiating the proceeding (the 'moving parties') at their fair value. . . . [¶] (b) If the purchasing parties (1) elect to purchase the shares owned by the moving parties, and (2) are unable to agree with the moving parties upon the fair value of such shares, and (3) give bond with sufficient security to pay the estimated reasonable expenses (including attorneys' fees) of the moving parties if such expenses are recoverable under subdivision (c), the court upon application of the purchasing parties, either in the pending action or in a proceeding initiated in the superior court of the proper county by the purchasing parties in the case of a voluntary election to wind up and dissolve, shall stay the winding up and dissolution proceeding and shall proceed to ascertain and fix the fair value of the shares owned by the moving parties. [¶] (c) The court shall appoint three disinterested appraisers to appraise the fair value of the shares owned by the moving parties, and shall make an order referring the matter to the appraisers so appointed for the purpose of ascertaining such value. . . . The award of the appraisers or of a majority of them, when confirmed by the court, shall be final and conclusive upon all parties. The court shall enter a decree which shall provide in the alternative for winding up and dissolution of the corporation unless payment is made for the shares within the time specified by the decree. . . . Any shareholder aggrieved by the action of the court may appeal therefrom. [¶] (d) If the purchasing parties desire to prevent the winding up and dissolution, they shall pay to the moving parties the value of their shares ascertained and decreed within the time specified pursuant to this section, or, in case of an appeal, as fixed on appeal. On receiving such payment or the tender thereof, the moving parties shall transfer their shares to the purchasing parties."

All statutory references are to the Corporations Code unless otherwise indicated.

On September 12, 1991, respondents filed a petition to avoid voluntary dissolution of West Coast under section 2000. In the unverified petition, respondents alleged that "[a]t a series of meetings . . . Anwar Abdullah and Jamil Abdullah Shad stated that their shares were being voted either to sell the Corporation to a third person, and not to [respondents], or to dissolve the Corporation." In support of this allegation, respondents submitted the declaration of their attorney and their own declarations. In his declaration, their attorney stated that he was asked by respondents "to consult with them concerning the decision of their brothers, . . . , to vote their 50% ownership interest in West Coast Laboratories, Inc. in favor of dissolving and winding up the corporation." He also stated he discussed the matter with appellants' attorney with respect to obtaining an appraisal of appellants' stock.

Maurice's declaration stated: ". . . Naim and I realized it was impossible to continue to work as before because our relationship [with appellants] had deteriorated considerably. Naim and I called a meeting for the four of us, and Naim and I offered Jamil and Anwar the following: Either they buy our shares from us after an appraisal or we buy their shares from them after an appraisal, or we sell the whole company to a third party. [¶] Jamil and Anwar replied that they agree to sell the company to a third party providing that neither me nor Naim would remain working for the buyer, even if it was on a consulting basis and for a short time. Naim and I told Jamil and Anwar that it would be difficult to find a buyer who would accept these terms . . . . [¶] . . . Anwar and Jamil then said they want the assets of the company to be sold and money or left-over assets divided among the four of us and then everyone goes his own way."

Naim's declaration stated: "We, that is, Maurice and I, offered to buy out Jamil and Anwar at an appraised price. They refused. We offered to give them the option to buy us out or compel us to buy them out on terms that we would propose. They refused. We offered to sell to a third party, if a buyer could be found. They refused . . . . Finally, Jamil and Anwar said they wanted to sell the assets of the company, divide the money and go."

Along with the petition, appellants' filed a motion for appointment of appraisers to ascertain the fair value of the corporate shares.

On March 9, 1992, appellants moved to strike the petition asserting that a suit for a voluntary or involuntary dissolution was not pending. They also filed an opposition to respondents' motion for appointment of appraisers on the same ground.

In their reply, respondents submitted the further declaration of their attorney who stated that he had been negotiating with appellants' counsel

who had "assured" him that appellants "want to dissolve the corporation and take their one-half share of the proceeds . . . ."

Appellants' counsel promptly filed a declaration denying this statement and characterizing it as "false." He submitted correspondence with respondents' counsel to show that "there has never been a vote for dissolution of any kind." (Fn. omitted.)

At the hearing on the petition and the motion, appellants' counsel, in response to the court's asking why it should not appoint an appraiser, said, "Because there is no proceeding for a voluntary dissolution made by the [appellants]. . . . [¶] Under 601A and under 601F there has to be a written notice of the meeting, and under 601F, if there is no such meeting, if there is no such written notice, your Honor—

"THE COURT: So, are you tell me—

"MR. GRUNFELD:—or written waiver, it invalidates the shareholders meeting.

"THE COURT: Are you telling me, counsel, that everything's fine with this corporation?

"MR. GRUNFELD: No, your Honor, I am not.

"THE COURT: And that there's no possible dissolution of this corporation, and that everything, and nobody's attempting to buy out the other side?

"MR. GRUNFELD: Your Honor, there are clearly negotiations going on, or which have gone on, between and among the brothers. That is not tantamount to a voluntary dissolution proceeding being filed by these respondents. [¶] As I started to say, your Honor, under 601A, under 601F, a failure to have a written notice or the failure to have a written waiver specifically invalidates any action taken at a meeting of the shareholders; even if there were one that ever took place. We contend that there is not."

At a later point in the hearing, the court asked appellants' counsel: "So there is a dispute, then?"

"MR. GRUNFELD: Disputes are not tantamount to a voluntary proceeding for dissolution which is the issue here as to whether there is a proceeding under 2000.

"THE COURT: Well, let's see what the Court of Appeals [sic] says, if you feel it's necessary."

The court granted the petition and appointed the appraisers. Respondents were instructed to prepare the order.

On March 23, 1992, respondents filed their opposition to appellants' motion to strike the petition. They argued that a voluntary proceeding for dissolution had been proven by their declarations regarding appellants' statements that they wanted to sell the company, divide the assets and each go his separate way. Further, respondents asserted that West Coast was a small company, "run informally," and thus the meetings referred to in their declarations were sufficient to satisfy the procedural requirements.

On March 26, 1992, appellants filed a motion for reconsideration of the order granting the petition and appointing appraisers, or, in the alternative, for a new trial. In connection with this motion, both appellants filed declarations. Regarding respondents' claim that at an informal meeting appellants had voted to dissolve the corporation, Jamil declared: "While there were discussions between the brothers, there were never any formal meetings. I never received notice of any such meetings, never signed a unanimous written consent to any conduct of action at those meetings, and never attended a meeting where either my brother Anwar or myself requested or demanded that the corporation be voluntarily dissolved. The accusation that Anwar and I decided to dissolve the company is absolutely false."

Anwar's declaration made the same point: ". . . I was never accorded any notice of any meetings of shareholders or directors in 1990 and 1991 where Jamil or myself requested a corporate dissolution. Similarly, I never signed any written consent to such action by shareholders. Finally, neither my brother Jamil nor myself ever requested or demanded that the corporation be voluntarily dissolved."

On March 30, 1992, appellants' motion to strike the petition was denied by a different judge than the judge who had granted the petition. On April 16, 1992, the first judge denied appellants' motion for reconsideration. The court also granted respondents' motion authorizing payment to the appraisers. Appellants then filed a petition for writ of mandate in this court. It was summarily denied.[2]

The three court-appointed appraisers concluded that West Coast was worth $1.6 million. On July 30, 1992, respondents filed a petition to confirm the award. On August 4, 1992, appellants responded by filing an at-issue memorandum for a trial on the issue of whether dissolution proceedings

---

[2] We take judicial notice of the file in the writ proceeding, *Abdullah* v. *Superior Court* (June 11, 1992) B067265 (nonpub. opn.).

were pending. On August 19, 1992, they filed their opposition to the petition to confirm the award in which they demanded an evidentiary hearing on whether a voluntary dissolution had occurred.

The petition was set for August 26, 1992. The hearing was continued to September 18, 1992, because the parties had apparently reached an agreement to settle the case. The following day, however, respondents withdrew from the agreement.

On September 18, 1992, the court granted the petition to confirm the award permitting respondents 30 days within which to purchase appellants' stock for $800,000. The court denied appellants' request for an evidentiary hearing. Appellants' counsel raised the issue of whether a dissolution had occurred. Ultimately, the court stated: "It says to me that no matter what happens, there's no settlement, no agreement, and there never will be. [¶] Therefore, this court is being forced into a situation where it must rule, and it is willing to do so, and it has ruled. Tentative stands."

On September 28, 1992, appellants filed a motion for reconsideration. On October 7, 1992, judgment was entered. After unsuccessfully attempting to get appellants to comply with the judgment, and being informed that they would not comply until their motion for reconsideration was heard, respondents moved to enforce the judgment. Appellants then filed a motion seeking a brief stay under Code of Civil Procedure section 918 pending a hearing on the motion to reconsider or, alternatively, a stay pending appeal, allowing them to post an undertaking and for an order to deposit their stock with the clerk of the court. On October 14, 1992, the court denied appellants' motion, and ordered payment of $800,000 to be held by the clerk of the court for appellants' stock pending further order. It also ordered the clerk to transfer appellants' shares of the corporation to the corporation.

On October 16, 1992, appellants filed their notice of appeal. We reverse.

I

 Respondents, citing *Finnie* v. *Town of Tiburon* (1988) 199 Cal.App.3d 1 [244 Cal.Rptr. 581], contend that the appeal should be dismissed as moot because it would "be impossible to return the parties to their respective positions if the judgment were reversed on appeal." The argument is devoid of merit.

In *Finnie*, the appellant brought an action to prevent a municipal election scheduled for March 3, 1987. His request for preliminary injunction was

denied and he appealed, inter alia, the order of denial. By the time the case reached the reviewing court, the election had taken place. The court dismissed that portion of the appeal as moot. The court stated: "It is well settled that an appellate court will decide only actual controversies. Consistent therewith, it has been said that an action which originally was based upon a justiciable controversy cannot be maintained on appeal if the questions raised therein have become moot by subsequent acts or events." (199 Cal.App.3d at p. 10.)

The instant case is not remotely similar to *Finnie*. Respondents' conclusory and unsupported assertion that the parties cannot be restored to the status quo ante does not equate with mootness because, whatever difficulty may exist in undoing the judgment upon reversal, the legal issues presented by the appeal are still justiciable.

In any event, respondents exaggerate the "impossibility" of restoring the parties to the status quo ante. Nothing has changed with respect to the corporation but percentages of ownership. The money paid to appellants for their interest was deposited with the superior court and is presumably still there to be repaid to the corporation once appellants' ownership interests are restored to them.

## II

In our review of the record in this case, it is clear that the trial judge, faced with the seemingly intractable conflict between the parties, attempted to fashion a fair and workable solution. While we commend him for his efforts, we must reverse the judgment on the grounds that the purported voluntary dissolution of West Coast, which set these proceedings in motion, was procedurally invalid and not supported by the evidence.

"There is no independent right on the part of one or more stockholders in a corporation to compel the sale to them of the shares of stock of another." (*Cubalevic v. Superior Court* (1966) 240 Cal.App.2d 557, 562 [49 Cal.Rptr. 698].) *Cubalevic* was decided under the predecessor statute to section 2000. The reviewing court issued a writ to prohibit the superior court from proceeding with a hearing to determine the fair cash value of stock in a corporation on a cross-complaint to stay the involuntary dissolution of the corporation where the complaint to dissolve it had been dismissed. "There being no such independent right [to compel the sale of stock] it must follow that there could be no cause of action stated to compel such a sale whether by way of cross-complaint or counterclaim which would survive after dismissal of the action for involuntary dissolution of the corporation in which

the remedy of purchase is given." (*Cubalevic* v. *Superior Court, supra,* at p. 562.)

By parity of reasoning, there can be no action under section 2000 to avoid the *voluntary* dissolution of a corporation through purchase of the initiating shareholders' stock unless they have, in fact, initiated a voluntary dissolution. Whether this has happened is both a question of procedure and a question of fact.

Section 1900, subdivision (a) provides: "Any corporation may elect voluntarily to wind up and dissolve by the vote of shareholders holding shares representing 50 percent or more of the voting power." (§ 1900, subd. (a).) Under section 1903, subdivision (a), "Voluntary proceedings for winding up the corporation commenced upon the adoption of the resolution of shareholders or directors of the corporation electing to wind up and dissolve, or upon the filing with the corporation of a written consent of shareholders thereto." (§ 1903, subd. (a).)

Furthermore, section 601, subdivision (f), in the chapter of the code that discusses shareholder meetings and consents, states, in relevant part: "Any shareholder approval at a meeting, other than unanimous approval by those entitled to vote, pursuant to Section . . . 1900 . . . *shall* be valid only if the general nature of the proposal so approved was stated in the notice of meeting or in any written waiver of notice." (§ 601, subd. (f), italics added.)

Appellants argue that the failure of West Coast to have followed the motion/waiver requirement set out in section 601, subdivision (f) renders that alleged dissolution invalid. Based on the plain language of the statute, we must agree.

The word "shall" expresses a mandatory intent unless the legislative history of the statute where it occurs shows otherwise. (*Utah Property & Casualty Ins. etc. Assn.* v. *United Services Auto. Assn.* (1991) 230 Cal.App.3d 1010, 1017-1018 [281 Cal.Rptr. 917].) The legislative history of section 601, subdivision (f) is set forth in the Legislative Committee comment to the statute: "Certain matters presented for action to shareholders are of such fundamental importance that specific notice of their proposed consideration at any meeting, including the annual meeting, is required by this subdivision." (West's Ann. Corp. Code (1990 ed.) § 601, subd. (f), p. 304.)

Respondents do not contend either that the required notice was given or that a written waiver was signed but instead advance the following arguments: the waiver by attendance provision of section 601, subdivision (e)

applies; compliance with subdivision (f) was excused because West Coast is a small, family-held corporation that has always been informally run; and the notice, if any was due, should have been given by appellants since they were the ones who wanted to dissolve the corporation and thus they are estopped from objecting to the noncompliance with subdivision (f). None of these arguments has any merit.

Section 601, subdivision (e) provides in relevant part: ". . . Attendance of a person at a meeting shall constitute a waiver of notice of and presence at such meeting, except when the person objects, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened and except that attendance at a meeting is not a waiver of any right to object to the consideration of matters required by this division to be included in the notice but not so included, if such objection is expressly made at the meeting. Neither the business to be transacted at nor the purpose of any regular or special meeting of shareholders need be specified in any written waiver of notice, consent to the holding of the meeting or approval of the minutes thereof, unless otherwise provided in the articles or bylaws, *except as provided in subdivision (f)*." (§ 601, subd. (e), italics added.)

Respondents maintain that by attending the meeting at which they voted to dissolve the corporation without objecting to lack of notice, appellants waived their right to make such objection under section 601, subdivision (e). This argument ignores the exception in subdivision (e) that limits its application by reference to subdivision (f), which, as we have seen, requires a notice of meeting or a written waiver. As a matter of statutory construction, moreover, a specific statute takes precedence over a general statute on the same subject. (*Spilman* v. *California Highway Patrol* (1989) 212 Cal.App.3d 59, 63 [260 Cal.Rptr. 400].) Section 601, subdivision (f), because it deals specifically with notice and waiver with respect to voluntary dissolution under section 1900, takes precedence over the more general waiver provisions of section 601, subdivision (e).

Nor are respondents assisted by the two cases on which they rely for the proposition that formalities need not be observed in voluntary dissolutions under section 1900, *ABC Brewing Corporation* v. *Commissioner of Int. Rev.* (9th Cir. 1955) 224 F.2d 483, and *Herschfelt* v. *Knowles-Raymond etc. Co.* (1955) 130 Cal.App.2d 347 [279 P.2d 104]. Neither case involves the issue of notice and waiver and since both predate enactment of section 601, subdivision (f), they are of no value in interpreting that statute.

Equally unpersuasive is respondents' argument that small, family owned corporations need not comply with corporate formalities such as section 601,

subdivision (f). None of the cases they cite support the proposition that such corporations are excused from the provisions of that section by virtue of their size or ownership. To the contrary, as the legislative committee note to that section makes clear, the voluntary dissolution of a corporation is a matter of "such fundamental importance" that the Legislature enacted subdivision (f) to provide specific notice/waiver requirements for that transaction.

Finally, respondents contend that appellants are, in effect, estopped from raising the notice issue because it was up to them to provide appropriate notice since it was they who wanted to dissolve the corporation. There is no support for this argument. ■ The elements of estoppel require proof that (1) the party to be estopped was apprised of the facts giving rise to the estoppel; (2) the party intended that his or her conduct would be acted upon, or acted so that the party claiming estoppel had a right to believe it was intended; (3) the party claiming estoppel was ignorant of the true state of facts; and (4) the party claiming estoppel relied upon the conduct of the other to his or her detriment. (*Robinson* v. *Fair Employment & Housing Com.* (1992) 2 Cal.4th 226, 244-245 [5 Cal.Rptr.2d 782, 825 P.2d 767].) ■ There was no showing of any kind that would support application of the doctrine of estoppel in this case.

In short, there was a total and inexcusable failure to comply with the notice/waiver requirements that are a prerequisite to a valid voluntary dissolution of a corporation and, therefore, the judgment must be reversed.

### III

■ In addition to the procedural ground for reversal, the judgment must also be reversed because substantial evidence does not support the conclusion that appellants voted their stock to voluntarily dissolve the corporation.

■ Upon review of the evidence, all conflicts are resolved in favor of the judgment and all legitimate and reasonable inferences are indulged to support it. (*Earl of Loveless, Inc.* v. *Gabele* (1991) 2 Cal.App.4th 27, 32 [2 Cal.Rptr.2d 829].) Moreover, we discard conflicting evidence and view only that evidence that would support the judgment. (*Hinson* v. *Clairemont Community Hospital* (1990) 218 Cal.App.3d 1110, 1125 [267 Cal.Rptr. 503].)

■ The pivotal claim in this proceeding of which proof by respondents was required was that appellants had voted to voluntarily dissolve West Coast under the provisions of sections 1900 and 601, subdivision (f). As is

already clear, there was no evidence that the notice requirement was either observed or properly waived. Moreover, the declarations by respondents do not unequivocally establish that appellants voted to dissolve the corporation. Rather, those declarations show that an impasse had been reached between the brothers, that various methods of resolving the impasse had been suggested and rejected, and that it was the preference of appellants to sell the assets of the company, divide the money and go. What is missing from the declarations is the link between appellants' preference for this course of action and evidence that the preference was translated into formal action. Without this evidence, all that was established is that the parties were in negotiation. This was not evidence sufficient to base a finding that a voluntary dissolution had actually been voted by the appellants, a point the trial judge may have recognized when he referred to a "possible dissolution" having taken place. Before the provisions of section 2000 apply, however, an actual, not a possible, dissolution must be shown.

The judgment is reversed and remanded for further proceeding consistent with this opinion. Appellants to have their costs on appeal.[3]

Vogel (C. S.), J., and Hastings, J., concurred.

A petition for a rehearing was denied May 24, 1994.

---

[3]In view of our disposition, it is not necessary to address appellants' further arguments regarding the deficiencies of the proceedings below. Their claim for restitution under Code of Civil Procedure section 908 should be addressed to the trial court on remand.