[No. B080015. Second Dist., Div. Four. Apr. 11, 1996.]

GEORGE HOLLANDER, Plaintiff and Appellant, v.
CALIFORNIA MANUFACTURING ENTERPRISES, INC., Defendant
and Respondent.

564

## Counsel

Joseph Stone for Plaintiff and Appellant.

Katz, Hoyt, Seigel & Kapor and Scott H. Jacobs for Defendant and Respondent.

## Opinion

**VOGEL (C. S.), P. J.—**  In this case we confront the question of whether a party who is both the secured creditor on a promissory note and a lessor of real property must give notice of sale to the guarantor of the note prior to selling collateral abandoned by the insolvent debtor/lessee when it vacated the leasehold. We agree with the trial court that failure to give notice precludes the creditor from seeking a deficiency judgment, and therefore affirm the judgment entered in favor of the guarantor.

### Background

Appellant George Hollander owned and operated an aluminum finishing, anodizing, and processing facility, the Aluminum Processing Company. Appellant also owned the real property on which the business was located. In

March of 1984, appellant, his wife, and the Aluminum Processing Company entered into an asset purchase agreement with APC Acquisition, Inc. (APC) under which APC purchased the assets of the company. A portion of the purchase price was paid in the form of a $550,000 promissory note secured "by a security interest in certain machinery and equipment owned by APC Acquisition, Inc." The holder of the security interest (at that time the Aluminum Processing Company) failed to perfect it by filing a financing statement, although a financing statement was executed and delivered to the company. APC was the maker of the note. Respondent California Manufacturing Enterprises, Inc. (CME) guaranteed it. In the guarantee, CME agreed that appellant could "proceed against the undersigned directly and independently of APC Acquisition, Inc.," but did not purport to waive any other rights of the guarantor or obligations of the creditor.

In 1990, an entity known as IMCOA purchased the stock and assets of APC and accepted assignment of the obligations under the note. IMCOA made the quarterly payments due on the note and the monthly rent through March of 1991. On May 31, 1991, IMCOA filed bankruptcy.[1] Appellant was granted relief from the automatic stay to recover possession of the real property. At that time, appellant was apparently concerned about the presence on the property of hazardous chemicals, used in the processing of aluminum, which IMCOA had been illegally discharging into the sewer system for some time prior to the bankruptcy. IMCOA surrendered possession of both the real property and numerous items of personal property to appellant on August 2. Various chemicals, as well as some of the machinery and equipment which collateralized the note, were included in the surrender. Appellant sent a "Notice of Right to Claim Abandoned Property" to CME and its owners Stephen T. Braunheim and David A. Janes. The notice contained a description of the items left behind and stated: "Unless you pay the reasonable cost of storage and take possession of the property to which you are entitled not later than eighteen (18) days after this Notice is deposited in the mail, this property may be disposed of pursuant to Civil Code Section 1988."[2]

A public sale of the abandoned items took place on September 12, 1991. Notice of the sale was published in the Star-News on August 28, 1991, and

---

[1]The statement of decision erroneously said that "the Note was in default at the time [IMCOA] filed bankruptcy . . . ." Both parties agree this was not the case.

[2]Section 1980 et seq. of the Civil Code provides a procedure whereby a landlord may sell items abandoned by a tenant "at public sale by competitive bidding." When personal property is left on the vacated property, section 1983 requires the landlord to give notice to the tenant "and to any other person the landlord reasonably believes to be the owner of the property" describing the property and giving them a date by which claim for return of the property must be made. "The date specified in the notice shall be a date not less than 15 days after the notice is personally delivered or, if mailed, not less than 18 days after the notice is deposited in the mail." (Civ. Code, § 1983, subd. (b).)

September 4, 1991, pursuant to section 1988, subdivision (b), of the Civil Code.[3] No notice of sale was mailed or personally delivered to CME or the debtor. Appellant purchased the items at the public sale by bidding the value of accrued storage costs—$16,000. Appellant subsequently made arrangements with another entity to clean up and remove waste from the premises in exchange for all of the abandoned equipment, machinery, and chemicals, and $55,000 cash paid to appellant over 11 months.

At the point when IMCOA defaulted, approximately $185,000 remained due on the note. Appellant brought the underlying action against CME as guarantor for payment of the deficiency. CME's defense was based on exoneration due to appellant's failure to comply with California Uniform Commercial Code section 9504. Trial was to the court on stipulated facts, declarations, and some brief oral testimony. The trial court rendered a defense verdict. Appellant appealed from the judgment.

## DISCUSSION

California Uniform Commercial Code section 9504 governs the circumstances under which a secured creditor may seek a deficiency judgment after the sale or other disposal of the collateral securing a debt. "A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing." (Cal. U. Com. Code, § 9504, subd. (1).) "A sale or lease of collateral may be as a unit or in parcels, at wholesale or retail and at any time and place and on any terms, provided the secured party acts in good faith and in a commercially reasonable manner. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, *the secured party must give to the debtor*, if he or she has not signed after default a statement renouncing or modifying his or her right to notification of sale, . . . *a notice in writing of the time and place of any public sale or of the time on or after which any private sale or other intended disposition is to be made*." (Cal. U. Com. Code, § 9504, subd. (3), italics added.) ■ Although some authority exists to the contrary, it is the prevailing view in California that a guarantor comes within the statutory definition of "debtor" and is therefore entitled to notice under section 9504. (See, e.g., *Canadian Commercial Bank* v. *Ascher Findley Co.*

---

[3]Civil Code section 1988, subdivision (b) provides in part: "Notice of the time and place of the public sale shall be given by publication pursuant to Section 6066 of the Government Code in a newspaper of general circulation published in the county where the sale is to be held. The last publication shall be not less than five days before the sale is to be held. The notice of the sale shall not be published before the last of the dates specified for taking possession of the property in any notice given pursuant to Section 1983."

(1991) 229 Cal.App.3d 1139 [280 Cal.Rptr. 521]; *American National Bank* v. *Perma-Tile Roof Co.* (1988) 200 Cal.App.3d 889 [246 Cal.Rptr. 381]; *Connolly* v. *Bank of Sonoma County* (1986) 184 Cal.App.3d 1119 [229 Cal.Rptr. 396]; *C.I.T. Corp.* v. *Anwright Corp.* (1987) 191 Cal.App.3d 1420 [237 Cal.Rptr. 108]; but see *Rutan* v. *Summit Sports, Inc.* (1985) 173 Cal.App.3d 965 [219 Cal.Rptr. 381].)

■ The importance of notice was recently discussed by the Supreme Court in *Ford & Vlahos* v. *ITT Commercial Finance Corp.* (1994) 8 Cal.4th 1220, 1232 [36 Cal.Rptr.2d 464, 885 P.2d 877]: "The purpose of notice to the debtor and to other secured creditors under the California Uniform Commercial Code is to alert them that their interests may be extinguished very soon. This concept derives from the venerable American legal rule that a private creditor must give formal legal notice before selling a debtor's property at public auction. [Citations.] Because a nonjudicial foreclosure sale is a 'summary sale' [citation] that the secured party is entitled to conduct relatively quickly [citation], elementary fairness to the debtor requires that it, other interested parties, and the public receive formal notice so as to protect the debtor from another's self-dealing or an unfairly low auction price [citation]."

In a 1990 amendment to California Uniform Commercial Code section 9504, the Legislature clearly set forth the consequences of failure to give notice as required by subdivision (3): "If the security interest secures an indebtedness, the debtor is liable for any deficiency unless otherwise agreed or otherwise provided in the Retail Installment Sales Act . . . or any other statute, *but only* (i) *if the debtor was given notice, if and as required by subdivision (3), of the disposition of the collateral* in accordance with subdivision (3) . . . ." (Cal. U. Com. Code, § 9504, subd. (2)(b), italics added.) Even before this amendment, those California courts to have considered the issue concluded that failure to give notice prevented the creditor from seeking to recover any deficiency remaining after the sale of the collateral from the debtor. (See, e.g., *Canadian Commercial Bank* v. *Ascher Findley Co., supra,* 229 Cal.App.3d at p. 1149 ["Failure to comply with either the notice requirement *or* the requirement of commercial reasonableness will act as an absolute bar to a deficiency judgment. [Citation.]"]; *American National Bank* v. *Perma-Tile Roof Co., supra,* 200 Cal.App.3d at p. 895 ["California courts . . . follow the American majority rule with regard to the failure of a secured party to comply with the notice provisions of section 9504. Where the secured party fails to comply with the notice requirements of section 9504, it is barred from obtaining a deficiency judgment. [Citations.]"]; *Atlas Thrift Co.* v. *Horan* (1972) 27 Cal.App.3d 999, 1009 [104 Cal.Rptr. 315, 59

A.L.R.3d 389] ["If the secured creditor wishes a deficiency judgment he must obey the law. If he does not obey the law, he may not have his deficiency judgment."].)

Appellant does not dispute that California Uniform Commercial Code section 9504 requires secured creditors to give notice of sale of collateral or that failure to give notice leads to the inability to seek a deficiency judgment. Appellant, instead, proposes three alternate theories under which he believes he should have prevailed: first, that the provisions of section 9504 do not apply because he was not a secured creditor; second, that he gave constructive notice or actual notice by sending the "notice of right to reclaim abandoned property"; and third that exigent circumstances justified sale of the collateral without notice.[4] We find no merit to any of these contentions.

A

Section 9504 applies by its terms to "[a] secured party" and governs what a secured party must do if he wishes to sell, lease, or otherwise dispose of collateral "after default." (Cal. U. Com. Code, § 9504, subd. (1).) To establish that he was not "a secured party after default," appellant points to the following chain of events. First, he or his company failed to perfect the security interest. Then the property was transferred to IMCOA by APC. Thereafter, IMCOA became insolvent. Because an unperfected security interest is subordinate to the right of a person who becomes a "lien creditor" before the security interest is perfected (Cal. U. Com. Code, § 9301, subd. (1)(b)), and a "lien creditor" includes "a trustee in bankruptcy from the date of the filing of the petition" (Cal. U. Com. Code, § 9301, subd. (3)), appellant reaches the conclusion that section 9504 does not apply.

---

[4]The parties devote a considerable portion of their briefs to a discussion of whether appellant was improperly forced to elect between remedies. While it is true that the trial court in its statement of decision (drafted by CME) states that appellant "had an apparent choice of remedies" and that "[appellant's] choice to proceed under [the provisions of the Civil Code] was the election of a remedy which was prejudicial to the rights of the guarantor," the doctrine of election of remedies, in its usually understood meaning which has to do with the forced election between alternate judicial remedies, has no relevance to this case. The trial court here did not force an election between alternate remedies. Faced with two applicable statutory schemes, appellant decided which statutory requirements to follow and which to ignore before the litigation commenced. The parties' discussion of whether section 9504 of the California Uniform Commercial Code "takes precedence" over section 1980 et seq. of the Civil Code is similarly flawed. As both a landlord and a secured creditor, appellant could have complied with both the statutory scheme applicable to landlords dealing with abandoned personal property (Civ. Code, § 1980 et seq.) and the provisions of the California Uniform Commercial Code governing sale of collateral by a secured party (Cal. U. Com. Code, § 9504). The matter to be resolved here is how the failure to comply with certain statutory mandates, in particular the notice provisions of section 9504 of the California Uniform Commercial Code, affected appellant's right to pursue a deficiency judgment.

The conclusion does not follow. Section 9105, subdivision (1)(m) of the California Uniform Commercial Code defines secured party as one "in whose favor there is a security interest . . . ." Although a security interest is *perfected* by filing a financing statement, it *attaches* once "the debtor has signed a security agreement which contains a description of the collateral," "[v]alue has been given," and "[t]he debtor has rights in the collateral." (Cal. U. Com. Code, § 9203, subds. (a), (b) & (c).) Thus, appellant became a secured party in 1984 when the security agreement was executed. The fact that another party may have arguably had a superior claim to the collateral was irrelevant, particularly in light of the fact that no priority interest was ever asserted by anyone. The most that can be said is that the trustee had the power to avoid the security interest (11 U.S.C. § 544(a)), but never attempted to do so. As of the date the collateral was sold, appellant was a secured creditor in possession of the collateral that secured the debt and was faced with no competing claims. Nothing constrained him from complying with section 9504.

## B

Relying on the discussion in *Earl of Loveless, Inc.* v. *Gabele* (1991) 2 Cal.App.4th 27 [2 Cal.Rptr.2d 829], appellant contends that actual notice was given. In *Earl of Loveless*, the court held that the guarantor had waived his right to notice where he conferred with the creditor regarding specific items of collateral and undertook to sell some equipment. (2 Cal.App.4th at p. 35.) The court concluded by stating: "Although [the guarantor] did not receive a formal written notice of disposition, it is clear that he was aware of the need to dispose of the collateral and in fact participated in its disposition. Under these circumstances compliance with the statute would have been an idle act . . . ." (*Ibid.*)

Appellant specifically asserts that the notice given pursuant to Civil Code section 1983 was sufficient to meet the requirements of section 9504 of the California Uniform Commercial Code. A comparison of the two notice provisions reveals that appellant's analysis is not correct. Section 9504 of the California Uniform Commercial Code mandates that "[n]otice in writing of the time and place of any public sale or of the time on or after which any private sale or other intended disposition is to be made" be given. (Cal. U. Com. Code, § 9504, subd. (3).) "Such notice must be delivered personally or be deposited in the United States mail postage prepaid addressed to the debtor . . . at least five days before the date fixed for any public sale or before the day on or after which any private sale or other disposition is to be made." (§ 9504, subd. (3).) The notice mailed to CME in compliance with

Civil Code section 1983 stated only that "[u]nless you pay the reasonable cost of storage and take possession of the property to which you are entitled not later than eighteen (18) days after this Notice is deposited in the mail, this property may be disposed of pursuant to Civil Code Section 1988." It did not provide the time, date, or place of sale, and appellant does not contend that CME otherwise had actual notice of the details of the sale. Appellant failed to establish that the requirement of notice was satisfied.

## C

■ Appellant also argues that the collateral was properly disposed of without notice because he was faced with an emergency requiring immediate action. Here, too, he relies on language in *Earl of Loveless* in which the court noted the existence of "some evidence that this was an emergency situation requiring fast action, excepted from the formal notice requirements, due to the short time span the parties were allowed to dispose of the collateral located inside the restaurant that was leased or sold to a third party." (2 Cal.App.4th at p. 35.) In this regard, the court pointed to the fact that a contractor had started demolishing the interior of the restaurant and with it the remaining collateral. (*Ibid.*) The statute recognizes an exception to the notice requirement where "collateral is perishable or threatens to decline speedily in value . . . ." (Cal. U. Com. Code, § 9504, subd. (3).)

The question of whether an emergency justifying failure to give notice existed is one of fact. (See *Earl of Loveless, Inc.* v. *Gabele, supra,* 2 Cal.App.4th at p. 35; *Ford & Vlahos* v. *ITT Commercial Finance Corp., supra,* 8 Cal.4th at p. 1235 [question of whether a sale was "commercially reasonable" under California Uniform Commercial Code section 9504, subdivision (3), a factual one, and trial court's findings will not be disturbed unless no substantial evidence supports them].) We do not believe the facts here warrant the application of the statutory exception or the reasoning of the court in *Earl of Loveless.* Appellant points to the existence of hazardous chemicals on the property to justify emergency action. As CME accurately points out, the chemicals were not part of the collateral so that any hazard which existed could not have been due to the presence of the equipment and machinery securing the loan. Moreover, section 9504 requires only five days' notice. Appellant's decision to proceed under Civil Code section 1983 and to mail notice resulted in a minimum 18-day delay. (Civ. Code, § 1983, subd. (b).) Further refuting the emergency theory is the fact that appellant left the collateral and chemicals on the property for two months, from August of 1991 until October, before selling it to another party as part of a waste disposal deal. It is clear from the evidence that the problem was not

that appellant did not have time to give statutory notice, but that he was unaware of his obligation to do so or chose to disregard it. No exigent circumstances existed to create an exception.

## DISPOSITION

For all the foregoing reasons, the judgment is affirmed.

Epstein, J., and Rubin, J.,* concurred.

---

*Judge of the Municipal Court for the Santa Monica Judicial District sitting under assignment by the Chairperson of the Judicial Council.