[No. B133888. Second Dist., Div. Four. June 28, 2000.]

CERRITOS VALLEY BANK, Plaintiff and Appellant, v.
CHARLES F. STIRLING, Defendant and Respondent.

**COUNSEL**

Cohen, Eagan, Leonard & Parker and Arthur Jarvis Cohen for Plaintiff and Appellant.

Tuttle & Taylor, Michael H. Bierman, Sam S. Oh and Julie M. Ruhlin for Defendant and Respondent.

**OPINION**

**VOGEL (C. S.), P. J.—**

### INTRODUCTION

This is an action upon a guaranty. The guarantor moved for summary judgment on the basis that the secured creditor's failure to give him postdefault notice of the sale of the collateral barred its claim for a deficiency judgment. Based upon statutory and decisional law, the trial court found that the guarantor's predefault waiver of the requirement of notice was void as a matter of law. In addition, the trial court rejected the creditor's attempt to create triable issues of fact on other points. The trial court therefore granted summary judgment to the guarantor. This appeal by the creditor follows. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On July 16, 1996, West Coast Microbreweries, Inc. (West Coast) executed a $300,000 promissory note in favor of Cerritos Valley Bank (Bank). At the same time, West Coast executed a business loan agreement, a commercial security agreement, and a UCC-1 financing statement. The commercial security agreement is a form document. Its preprinted portion recites: "The

word 'Collateral' means the following described property of Grantor, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located." Immediately following that sentence, the following phrase was typed: "All inventory, accounts, equipment, general intangibles and fixtures." At the same time, Charles F. Stirling executed a guaranty in favor of Bank for the $300,000 note. The guaranty provides: "Except as provided by applicable law, Guarantor waives any right to require Lender to . . . give notice of the terms, time, and place of any sale of the collateral . . . ."

On August 16, 1996, West Coast executed a second promissory note in favor of Bank for the amount of $250,000. West Coast secured that note through the execution of a commercial security agreement and a UCC-1 financing statement. Once again, the form commercial security agreement contains the preprinted language: "The word 'Collateral' means the following described property of Grantor, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located." Below that language, the phrase "See attached Exhibit 'A'" was typed. Exhibit A consists of a document entitled "Item Description" which lists 30 different properties. The parties refer to these items as microbrewery equipment.

In 1997, West Coast defaulted on both notes and subsequently declared bankruptcy.

In August 1998, Bank obtained a writ of possession and took possession of the microbrewery equipment. In December 1998, Bank sold the microbrewery equipment but did not give Stirling (the guarantor) advance notice of the sale.

Because the sale proceeds were only $47,500, Bank pursued a deficiency action against Stirling based upon his execution of the guaranty. That lawsuit forms the basis of this appeal.[1]

Stirling moved for summary judgment on the basis that Bank's failure to give him advance notice of the sale of the collateral barred Bank's action against him. Stirling relied upon California Uniform Commercial Code section 9504, subdivision (3),[2] which provides: "[T]he secured party must give to the debtor, if he [or she] has not signed *after default* a statement renouncing or modifying his [or her] right to notification of sale . . . notice in writing of the time and place of any public sale or of the time on or after

---

[1]Bank's claims against other defendants to recover on the promissory notes and related causes of action are not before us.

[2]All undesignated statutory references are to the California Uniform Commercial Code.

which any private sale or other intended disposition is to be made." (Italics added.) Recognizing that Bank would rely upon the waiver of notice contained in the guaranty, Stirling pointed to section 9501, which bars predefault waiver of the right to notice. Subdivision (3) of that section provides: "To the extent that they give rights to the debtor and impose duties on the secured party, the rules stated in the subdivisions referred to below *may not be waived or varied* except as provided . . . ." (Italics added.) Subdivision (3)(b) then refers to "[s]ubdivision (3) of Section 9504 and subdivision (1) of Section 9505 [that] deal with disposition of collateral."

In an effort to defeat Stirling's summary judgment motion, Bank raised legal and factual arguments. The legal argument, concededly advanced in contradiction of settled law, was that the statutory scheme does *not* prohibit predefault waiver of the requirement that notice be given of the sale but instead only prohibits waiver of the requirement that the collateral be disposed of in a commercially reasonable manner. The factual arguments were that there were triable issues of fact as to: (1) whether the microbrewery equipment Bank sold was actually part of the collateral for the note Stirling guaranteed; and (2) whether *after* the default Stirling either waived his right to receive notice of the sale or was estopped from relying upon Bank's failure to give notice as a defense in the action on his guaranty.

The trial court found no merit to Bank's opposition and granted summary judgment in favor of Stirling. This appeal by Bank follows.

DISCUSSION

A. *Governing Legal Principles*

A secured party is entitled to sell any or all of the collateral securing a debt after the debtor has defaulted upon the obligation. (§ 9504, subd. (1).) The debtor must be given notice of the sale of the collateral and the sale must be conducted in a commercially reasonable manner. (§ 9504, subd. (3).) After the collateral has been sold, the debtor is liable for any deficiency *only if* it was given notice of the sale. (§ 9504, subd. (2); *Hollander v. California Manufacturing Enterprises, Inc.* (1996) 44 Cal.App.4th 561, 567-568 [51 Cal.Rptr.2d 694].) The protections of section 9504 are strictly construed and may *not* be waived by the debtor *prior to the default.* (*Canadian Commercial Bank v. Ascher Findley Co.* (1991) 229 Cal.App.3d 1139, 1149-1150 [280 Cal.Rptr. 521], citing § 9501, subd. (3).) "If the secured creditor wishes a deficiency judgment he must obey the law. If he does not obey the law, he may not have his deficiency judgment." (*Atlas Thrift Co. v. Horan* (1972) 27 Cal.App.3d 999, 1009 [104 Cal.Rptr. 315, 59 A.L.R.3d

389].) In particular, a secured creditor's failure to give notice of the sale of the collateral bars it from obtaining a deficiency judgment. (*Crocker Nat. Bank v. Emerald* (1990) 221 Cal.App.3d 852, 861 [270 Cal.Rptr. 699].)

As we recently noted, "[a]lthough some authority exists to the contrary, it is the prevailing view in California that a guarantor comes within the statutory definition of 'debtor' and is therefore entitled to notice under section 9504. [Citations.]" (*Hollander v. California Manufacturing Enterprises, Inc., supra,* 44 Cal.App.4th 561, 566-567.)

### B. *Stirling's Waiver of Notice in the Guaranty Was Void as a Matter of Law*

█ Bank first contends that we should give effect to Stirling's waiver of notice found in the guaranty. In so contending, Bank asks us to disagree with a substantial body of decisional law, including this division's opinion in *C.I.T. Corp. v. Anwright Corp.* (1987) 191 Cal.App.3d 1420, 1425-1427 [237 Cal.Rptr. 108]. We decline to do so. These decisions, which implement the legislative directive found in section 9501, subdivision (3), have consistently held that a predefault waiver, such as the one found in Stirling's guaranty, is void. Bank's argument to the contrary is not persuasive.

Bank urges that these cases have misconstrued the statutory scheme. Bank points to the fact that section 9501, subdivision (3)(b), which bars a predefault waiver, uses the following language in describing the statutory provisions which cannot be waived: "Subdivision (3) of Section 9504 and subdivision (1) of Section 9505 [that] deal with disposition of collateral." Bank focuses on the phrase "[that] deal with disposition of collateral" to argue that the Legislature only intended to bar waiver of the requirement that the sale of collateral be conducted consistent with principles of commercial reasonableness. Putting aside the fact that "disposition of collateral" necessarily includes giving notice of the sale of the collateral, Bank has far too limited a view of the interest which is protected by requiring the creditor to give the debtor notice of the sale of the collateral.

"[T]he purpose of [the] notice is to permit a debtor to bid at the sale and otherwise act to reduce his potential deficiency liability by all practical means. When the debtor defaults, the guarantor is a most likely target of the creditor. His interest is at least as great as that of the debtor in seeing that a maximum amount is realized upon the sale of collateral." (*C.I.T. Corp. v. Anwright Corp., supra,* 191 Cal.App.3d at p. 1425.) "Like the principal obligor, the guarantor has an interest in preventing collusive or commercially unreasonable sales of collateral, so as to minimize its liability on the

obligation secured. Like the principal obligor, the guarantor requires notice of the disposition so that it may redeem the collateral, or bid at sale, or produce other bidders at sale." (*Canadian Commercial Bank v. Ascher Findley Co., supra,* 229 Cal.App.3d at p. 1153.)

Given these policy concerns, we reject Bank's entreaty to depart from settled law. We conclude, as did the trial court, that Stirling's predefault waiver was void.

### C. *No Triable Issue of Fact Exists as to Whether the Microbrewery Equipment Was Collateral for Stirling's Guaranty*

Bank contends a triable issue of fact exists as to whether the microbrewery equipment it sold was actually part of the collateral for the loan Stirling guaranteed. Bank claims the parties never intended to include the microbrewery equipment in the collateral for the loan so that Bank's failure to give notice to Stirling of the sale of that equipment does not bar its action against him on the guaranty. Bank maintains that the microbrewery equipment was collateral *only* for the second note executed in August 1996, not the July 1996 note Stirling guaranteed.

In the trial court, Bank offered a declaration from its executive vice-president Thomas Yott. Yott averred, in part: "It was the intent and understanding of Cerritos Valley Bank that the microbrewery equipment was collateral only for the $250,000 loan (the second loan). It was not to be collateral for the $300,000 loan (the first note)."

The trial court held: "[Bank's] parol evidence that the microbrewery equipment does not secure the first note is inadmissible to contradict the clear and unambiguous terms of this agreement. Therefore, the court finds the microbrewery equipment secured the first note."

The trial court's ruling was correct.

The commercial security agreement executed concurrently in July 1996 with the $300,000 promissory note and the guaranty defined "collateral" as "[a]ll inventory, accounts, equipment, general intangibles and fixtures" whether "now owned or hereafter acquired." The microbrewery equipment is clearly embraced within this definition.[3]

"Under the parol evidence rule, extrinsic evidence is not admissible to contradict express terms in a written contract or to explain what the

---

[3]The agreement contained the following integration clause: "This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement."

agreement was. [Citation.] The agreement is the writing itself. [Citation.] . . . Parol evidence cannot . . . be admitted to show intention independent of an unambiguous written instrument. [Citation.]" (*Sunniland Fruit, Inc. v. Verni* (1991) 233 Cal.App.3d 892, 898 [284 Cal.Rptr. 824].)

 The language in the security agreement is clear and unambiguous. It consists of a "blanket lien" provision designed to cover *all* of the debtor's personal property, including after-acquired property. Bank's attempt to use Yott's declaration was in clear violation of the parol evidence rule. (See, e.g., *Matter of California Pump & Mfg. Co., Inc.* (9th Cir. 1978) 588 F.2d 717, 719-720.) The trial court correctly found no triable issue of material fact.[4]

### D. *No Triable Issues of Fact Exist on the Theories of Waiver or Estoppel*

 Lastly, Bank contends triable issues of fact exist on the theories that after the default Stirling either waived his right to notice or is estopped to assert Bank's failure to give notice. The record does not support Bank's contention.[5]

Bank's "Separate Statement" asserted that "Stirling, through his counsel, either waived notice or is estopped from requiring notice of sale." The evidence relied upon included a declaration from Bank's attorney, Arthur Jarvis Cohen (Cohen), and a series of correspondence between Cohen and Stirling's attorney, Sam S. Oh (Oh).

Section 9504, subdivision (3) is the provision requiring the creditor to give the debtor postdefault notice of the sale of the collateral. That provision provides for its only exception: if the debtor has "signed after default a statement renouncing or modifying his [or her] right to notification of sale . . . ." This means the debtor, which includes a guarantor, can waive postdefault notice *only* through a signed writing. Bank failed to produce any

[4]Bank also attempts to claim there is a triable issue of fact as to whether the microbrewery equipment was collateral for the first note by arguing that a security agreement executed a year later in 1997 *erroneously* indicated the microbrewery equipment was collateral for the July 1996 note. This is much ado about nothing. For one thing, as Bank itself concedes, Stirling (the guarantor) was not a party to the 1997 security agreement. For another thing, Stirling did not rely upon the 1997 agreement in moving for summary judgment. Instead, he relied, and continues to rely, upon the security agreement executed concurrently with his guaranty in July 1996. As explained above, the July 1996 agreement has a clear and unambiguous definition of collateral. No more need be said.

[5]Although, Bank's opposition to Stirling's summary judgment motion raised these points and Stirling responded to them, the trial court's ruling did not address them. Bank, however, failed to bring that omission to the trial court's attention.

evidence of a signed writing executed by Stirling waiving his statutory right to notice. Furthermore, assuming Oh, as Stirling's attorney, could act as Stirling's agent and waive that right to notice, Bank failed to produce any such waiver signed by Oh. Instead, Bank produced a series of letters between Oh and Cohen executed over an eight-month period prior to the sale. Bank does not identify any particular letter as constituting the waiver. Instead, it simply argues: "At no time did Stirling's counsel ever ask to receive notice; rather, his only concern was that the proceeds be applied to Stirling's debt. . . . [T]he writings themselves are not as significant as the fact of their existence." Bank turns the statutory scheme on its head by implying that Stirling, acting through his attorney, had an obligation to request notice. Not so. The law is clear: the creditor must give notice. (§ 9504, subd. (3).) Given that a waiver consists of an intentional relinquishment of a known right (*Outboard Marine Corp. v. Superior Court* (1975) 52 Cal.App.3d 30, 41 [124 Cal.Rptr. 852]), this correspondence does not create a triable issue of fact on a theory of waiver.[6]

In regard to Bank's claim of estoppel, "we seriously doubt whether the doctrine of estoppel may be employed offensively to absolve a secured party [Bank] from its failure to comply with the strict requirements of section 9504. California interpretive law is quite clear that predisposition notice may only be waived in writing by a debtor *after* default. Similarly, any estoppel to claim notice must be constructed from postdefault conduct or representations of the debtor. Given the requirement that postdefault waiver of disposition notice must be in writing, evidence of estoppel should also be grounded on a writing so as not to displace that specific provision of the Commercial Code. '*Unless displaced by the particular provisions of this code,* the principles of law and equity including . . . the law relative to . . . estoppel . . . shall supplement its provisions.' (Cal. Uniform Commercial Code, § 1103 . . . .)" (*Canadian Commercial Bank v. Ascher Findley Co., supra,* 229 Cal.App.3d 1139, 1160, italics in original.)

■ Estoppel may be invoked if a party (Stirling) has induced its adversary (Bank) to forbear from doing a particular act and the adversary relies upon that inducement to its prejudice. (See, e.g., *Barr v. ACandS, Inc.* (1997) 57 Cal.App.4th 1038, 1056-1057 [67 Cal.Rptr.2d 494].) ■ Applied to this case, that means Bank must show that by a writing or series of writings, Stirling lulled it into a false sense of security by leading Bank to believe that

---

[6]Cohen's declaration averred, in part: "During the course of my communication with Mr. Oh, both written and telephonic, not once did Oh ever ask to receive notice of the sale of the collateral. Rather, Oh made it clear to me that notice was not necessary, but that he only wanted the proceeds to be applied to Stirling's debt." The record did not support Cohen's second characterization of the correspondence. Not one of Oh's letters "made clear," as averred by Cohen, that Stirling did not want notice of the sale.

it did not have to give him notice of the sale. As with its claim of waiver, Bank fails to point to any particular letter which constitutes the estoppel but instead relies in a general way upon the series of correspondence. This ineffective approach fails. Furthermore, the requirement that an estoppel claim be grounded in a writing renders meritless Bank's argument that Stirling's deposition testimony, given after this lawsuit commenced, that he did not intend to purchase the microbrewery equipment constitutes evidence of estoppel. In sum, Bank has failed to demonstrate a triable issue of fact existed on the question of whether Stirling should be estopped from raising Bank's failure to give postdefault notice. (See also fn. 6, *ante.*)

## Disposition

The judgment is affirmed.

Hastings, J., and Curry, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 13, 2000.