[No. D046687. Fourth Dist., Div. One. Dec. 15, 2005.]

BONNIE P. et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent.
JACQUELINE P., Real Party in Interest.

## COUNSEL

Kathleen Murphy Mallinger, under appointment by the Court of Appeal, for Petitioner Bonnie P.

Diane Nichols, under appointment by the Court of Appeal, for Petitioner Gary P.

No appearance for Respondent.

Julie E. Braden, under appointment by the Court of Appeal, for Real Party in Interest.

## Opinion

**McCONNELL, P. J.**—In this case, the trial court granted the petition of Jacqueline P. for a declaration of emancipation under Family Code section 7120.[1] We conclude the court erred by not swearing in the witnesses, and in any event, even if we consider their statements valid testimony, substantial evidence does not satisfy the statutory criteria: Jacqueline is willingly living apart from her parents, Gary P. and Bonnie P., but *without their consent or acquiescence*, and she is not managing her own financial affairs. (§ 7120, subd. (b)(2) & (3).) Accordingly, we grant the parents writ relief.

### FACTUAL AND PROCEDURAL BACKGROUND

On April 30, 2005, Jacqueline, at age 16, gave birth to a daughter. Jacqueline then left Bonnie's home and began living with her boyfriend and the baby's father, Rafael P., and his parents, Josephine P. and Rafael P. (Rafael Sr.).

On May 19, 2005, Jacqueline filed a petition for a declaration of emancipation under section 7120. The petition stated she was managing her own financial affairs and began living apart from her parents on May 2, 2005, but not with their consent. An accompanying income and expense declaration stated she worked at a grocery store for about three weeks in the summer of 2004. It specified no current employment or salary or wages received the preceding month, and it reported for the preceding 12 months an average gross monthly income of $600 from salary or wages. It estimated total average monthly expenses of $2,070 and noted they were paid entirely by others.

A hearing on Jacqueline's petition was held June 16, 2005. Gary had notified the court he contested the petition, and the court allowed him to appear by telephone because he lives in Van Nuys and is disabled. According to Gary, Bonnie did not appear because of illness. Jacqueline appeared with Josephine and Rafael Sr. The bailiff informed the court that Rafael was arrested outside the courtroom before the hearing on outstanding felony warrants.

A court officer assigned to the case told the court Jacqueline sought emancipation for her baby's sake because of her parents' history of drug abuse and being on welfare. Jacqueline was not then planning to marry Rafael and she wanted to be responsible for her own finances. Jacqueline was earning $6.75 an hour working full time for a package delivery service and

---

[1] Statutory references are the Family Code unless otherwise specified.

she also received support from Rafael, who worked in drywall, and his parents, who cleaned houses and yards. The court officer acknowledged that Jacqueline had not been living apart from her parents or managing her own finances until recently.

The court did not swear in any of the witnesses. Jacqueline said she was working full time during the summer and would work part time when she returned to school. She liked school, her grade point average was 3.5 and she would be a senior in high school and 17 years of age during the 2005–2006 school year. Rafael's family helped her by paying utilities and providing food and childcare when she went to school and work. Jacqueline believed, however, that if Rafael's family could no longer help her she could support herself with the help of friends. For instance, her friend Melissa's mother, who works in daycare, would help her if she ever needed assistance and the family had a guest house she could use.

Jacqueline said she was not living with Bonnie because she receives welfare and provides nothing for Jacqueline or the baby, and Bonnie is "always leaving me at home and I can't get to my clinic appointments and things I need to." Bonnie cared for the baby one day and refused to do so again. Josephine, on the other hand, agreed to care for the baby while Jacqueline attended school. Jacqueline was not living with Gary because her parents had been separated for about two years and were going through a divorce, and her mother had primary custody of her. Jacqueline claimed her parents separated because Gary abused Bonnie.

In Gary's view, Jacqueline lacks the maturity to be on her own. Gary said he is in his eighth year of recovery and attends school full time. He feels Jacqueline would have a better life with him because he can offer a stable environment and get her involved in counseling. Gary planned to get Jacqueline into a college, and he explained he qualified for childcare at the college because of his disability. He arranged for a neighbor to care for the baby, but if necessary he would attend night school and take care of the baby while Jacqueline went to school. Further, the manager of the grocery store where Jacqueline worked the previous summer told Gary he would rehire her. Gary disagreed that Bonnie was unable to help Jacqueline care for the baby. He told the court Jacqueline disappeared suddenly and Bonnie filed a missing person's report with the police.

Jacqueline responded that Gary could not afford to support her and her baby because he was unemployed and received approximately $800 a month from disability. She stopped living with him because he had an anger management problem and refused to take anger management classes, and she lacks a working relationship with him. Gary countered that Jacqueline

stopped visiting him because he tried to get Rafael arrested for statutory rape and would not allow her to have contact with Rafael. Gary also said he obtained a restraining order against Rafael because of threats, and he complained that Rafael was in a gang and drove Jacqueline and their child around without a valid driver's license or insurance.

Josephine and Rafael Sr. addressed the court through an interpreter, but the court did not swear the interpreter in as a witness or identify him or her on the record. Rafael Sr. addressed questions about the legality of his presence in the United States. He said he was "waiting for his adjustment of status through INS for 14 years" and was due to get an appointment to "go get their green card." The interpreter spoke to the court off the record to "shed some light" on Rafael Sr.'s statements, after which the court expressed concern that if Rafael Sr. did not "have a legal basis to stay here, some or all family members could be deported which will impact Jacqueline's plans."

The court nonetheless granted Jacqueline's petition and issued a declaration of emancipation under section 7122, as she had a child and was doing well in school. The court also found that Bonnie has not "been there" for Jacqueline and Gary is not financially or otherwise able to provide a stable home, and Rafael's family provides Jacqueline with support. Gary and Bonnie separately appeal the order,[2] and we treat their notices of appeal as petitions for writ of mandate under section 7123, subdivision (b).[3]

## DISCUSSION

### I. *Irregularities in the Proceedings*

Gary contends the informal nature of Jacqueline's emancipation hearing violated statutory procedural requirements and his right to due process of law in the following respects: the court did not swear the witnesses and interpreter at the hearing to tell the truth; the interpreter's off-the-record discussion with the court to "shed some light" on Rafael Sr.'s statements about his immigration status deprived Gary of the opportunity to challenge her statements; the court officer's investigation was superficial and her presentation

---

[2] Gary and Bonnie attached declarations to their notices of appeal, which we disregard because they were not before the superior court.

[3] Section 7123, subdivision (b) provides: "If the petition [for a declaration of emancipation] is sustained, the parents . . . have a right to file a petition for a writ of mandate if they have appeared in the proceeding and opposed the granting of the petition." Jacqueline contends Bonnie's writ petition must be dismissed because she did not appear in the proceeding. We do not address Bonnie's standing to seek writ review because Gary's petition is proper under section 7123, subdivision (b), and both parents seek the same relief.

was subjective; and Gary did not get a meaningful opportunity to be heard because the court cut him off at the end of the hearing when he indicated he had further comments.

■ We agree that emancipation proceedings are subject to certain procedural requirements the court did not meet here. The due process clause of the Fourteenth Amendment protects against governmental interference with the fundamental liberty interest of parents in making decisions concerning the care, custody, control, and education of their children. (*Troxel v. Granville* (2000) 530 U.S. 57, 65 [120 S.Ct. 2054, 147 L.Ed.2d 49] (*Troxel*).) "[T]he due process clause does not permit a State to infringe on the fundamental right of parents to make childrearing decisions simply because a state judge believes a 'better' decision could be made." (*Id.* at pp. 72–73.)[4]

■ Family Code section 7110 conveys "the intent of the Legislature that [emancipation] proceedings . . . be as simple and inexpensive as possible." However, considering fundamental parental rights and interests at stake when a parent opposes an emancipation petition, we do not view section 7110's directive for simplicity as statutory authorization for courts to dispense with the basic requirements of the Evidence Code for evidentiary hearings. Evidence Code section 300 states that "[e]xcept as otherwise provided by statute, this code applies in every action before . . . a . . . superior court . . . ." ■ "If this command were not clear enough, the Law Revision Commission Comment to section 300 resolves any conceivable ambiguity in the statutory language; the Commission states that [Evidence Code] section 300 'makes the Evidence Code applicable to all proceedings conducted by California courts except those court proceedings to which it is made inapplicable by statute. . . .' [Citation.] The case law is equally explicit: 'Evidence Code section 300 makes it clear that, except as otherwise provided by statute, the Evidence Code applies to every evidentiary hearing in the state courts. . . .' " (*Jauregi v. Superior Court* (1999) 72 Cal.App.4th 931, 939 [85 Cal.Rptr.2d 553].)

■ Moreover, the necessity of an evidentiary hearing in emancipation proceedings under Family Code section 7120 et seq. is implicit in the statutory requirements of a formal petition (*id.,* § 7120), notice of the proceedings before the petition is heard (*id.,* § 7121), and formal findings on the petition by the court (*id.,* § 7122). Accordingly, the court should have

---

[4] Jacqueline cites *Troxel, supra,* 530 U.S. at page 60, and *Stanley v. Illinois* (1972) 405 U.S. 645, 652 [92 S.Ct. 1208, 31 L.Ed.2d 551] (*Stanley*), for the proposition that the law regarding emancipation is, in her words, "distinguished from domestic and dependency law because the fundamental liberty interest in maintaining familial relationships is not threatened by an emancipation." However, neither *Troxel* nor *Stanley* supports that proposition or otherwise addresses emancipation.

placed all witnesses who testified at Jacqueline's emancipation hearing under oath. (Evid. Code, § 710.) Further, it should have sworn the interpreter who translated for Rafael Sr. and Josephine as a witness (*id.*, §§ 750, 751, 752, subd. (a)) and identified him or her on the record (*id.*, § 752, subd. (b)).

In addition, after the court officer spoke, Gary advised the court over the telephone that he could not hear who was talking. The court explained it "was the court officer outlining the situation." The court should have asked the officer to repeat her summary and ensured that Gary was able to hear all witnesses. (Cal. Rules of Court, rule 298(g).)

Courts can meet the minimum procedural requirements for an evidentiary hearing without sacrificing the simplicity and cost savings the Legislature intends for emancipation proceedings. Following proper procedure and observing, if not strictly enforcing, statutory rules of evidence will foster informed decisionmaking based on reliable evidence and information.

Jacqueline asserts Gary waived appellate review of any defects in the emancipation proceedings because he acquiesced in them. She also contends the court's failure to swear witnesses was harmless error because Gary has not shown testimony under oath would have made a difference in the outcome. We need not decide these issues, however, because, as discussed *post*, even if we view the unsworn witness statements as properly admitted evidence, there is insufficient evidence to support the court's sustaining of Jacqueline's petition.

## II. *Sufficiency of the Evidence*

██ A petition for a declaration of emancipation must set forth with specificity certain facts, including that the "minor is at least 14 years of age," the minor "willingly lives separate and apart from the minor's parents or guardian with the consent or acquiescence of the minor's parents or guardian," and the "minor is managing his or her own financial affairs." (§ 7120, subd. (b)(1)–(3).) "The emancipation of a minor child must be proved; it is never presumed, and the burden of proof is on the one asserting it. . . . [¶] In determining whether a child has been emancipated, the intention of the parent governs." (59 Am.Jur.2d (2002) Parent and Child, § 84, p. 250, fns. omitted.)

Gary challenges the sufficiency of the evidence to support the court's implied findings that Jacqueline was living apart from her parents *with their consent or acquiescence* and that she was managing her own financial affairs. "When a judgment is attacked as being unsupported by the evidence, 'the

power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the [trier of fact].' " (*PWS, Inc. v. Ban* (1991) 234 Cal.App.3d 223, 230 [285 Cal.Rptr. 598].) " '[I]f the word "substantial" means anything at all, it clearly implies that such evidence must be of ponderable legal significance. Obviously the word cannot be deemed synonymous with "any" evidence. It must be reasonable in nature, credible, and of solid value; it must actually be "substantial" proof of the essentials which the law requires in a particular case.' " (*Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1203–1204 [52 Cal.Rptr.2d 518].)

Here, there was *no* evidence to support a finding that Gary or Bonnie consented to or acquiesced in Jacqueline's living apart from them. Indeed, Jacqueline declared under penalty of perjury on her emancipation petition that she did not have her parents' consent. At the hearing, Gary opposed Jacqueline's emancipation and represented that after Jacqueline suddenly disappeared, Bonnie filed a missing person's report with the police. Further, the court officer noted Jacqueline's parents oppose her emancipation.

Jacqueline asserts "[t]he information gathered by the . . . court during its questioning of all present indicated Jacqueline's parents had indeed acquiesced to Jacqueline's willing absence from her mother's home in that neither parent had made an effort to provide adequately for her." However, any arguable parental failure to adequately provide for a minor does not constitute parental consent or acquiescence to the minor's living apart from the parents. Parental neglect may be a basis for invoking the jurisdiction of the juvenile court under California's juvenile dependency scheme (Welf. & Inst. Code, § 300 et seq.), but it is not a statutory basis for emancipation under Family Code section 7120.

Although the lack of parental consent is dispositive, we also find the evidence does not support a finding Jacqueline was managing her own financial affairs. Her petition asserted she was doing so, but her accompanying income and expense declaration (declaration) and the information presented at the emancipation hearing do not support the assertion. The declaration noted Jacqueline's employment for three weeks in August 2004, several months before the hearing. The declaration stated she received $600 average monthly gross income from salary or wages during the preceding 12 months, but it reported no current employment and no income from salary or wages the preceding month. The declaration listed varying amounts of gross monthly income earned by Rafael and his family members, and stated they

each contributed to household expenses. It estimated Jacqueline's monthly expenses to be $2,070 and specified that others, presumably Rafael and his family, paid that entire amount.[5]

Additionally, the petition showed Jacqueline had been living apart from her parents for only six weeks at the time of the hearing, and the court understandably expressed concern about the ability of Rafael and his family to continue supporting Jacqueline in the future, as Rafael had just been incarcerated on outstanding warrants and it was questionable whether his parents were living in the United States legally. Jacqueline's speculative fall-back plan of living in a guest house owned by a friend's mother while attending school and working to pay for her "living arrangement and stuff" provided little assurance that without the help and support of Rafael's family, she could actually manage to pay rent and otherwise provide for herself and her baby and still attend school. Although the court officer reported Jacqueline was working full time for a package delivery service and Jacqueline said she was working full time *for the summer* (and would work part time when she returned to school), her temporary full-time employment did not establish her ability to manage her own financial affairs.[6]

 We conclude substantial evidence does not support the court's implied factual findings that Gary and Bonnie consented to or acquiesced in Jacqueline's living arrangement or that Jacqueline was adequately managing her own financial affairs within the meaning of section 7120, subdivisions (b)(2) and (3). Thus, its order of emancipation was improper.[7]

---

[5] The declaration claimed Jacqueline received $2,000 average monthly income from public assistance, but its notation that others paid her entire monthly expenses appears to defy that claim. The issue of public assistance was not discussed at the hearing, other than Jacqueline's accusation that Gary wanted her to live with him "so he can get the welfare for me and my baby."

[6] No reported opinion interprets the requirement that to be emancipated a minor must be "managing his or her own financial affairs." (§ 7120, subd. (b)(3).) Given the facts of this case—the lack of evidence of the stability of Jacqueline's living arrangement with Rafael and his family—we are not required to determine whether the phrase means the minor must be *independently* managing his or her finances, i.e., personally earning a salary or wages, or whether the minor may be sufficiently supported by others to satisfy the criterion.

[7] Section 7122, subdivision (a) provides that "[t]he court shall sustain the [emancipation] petition if it finds that the minor is a person described by Section 7120 and that emancipation would not be contrary to the minor's best interest." The court has wide discretion in determining whether emancipation is contrary to a minor's best interests (see *In re Eric B.* (1987) 189 Cal.App.3d 996, 1005 [235 Cal.Rptr. 22]), but that discretion comes into play only after the court finds, based on substantial evidence, that the basic requirements for emancipation set forth in section 7120 have been met.

## DISPOSITION

Let a writ of mandate issue directing the superior court to vacate its order of June 16, 2005, granting Jacqueline P.'s petition for declaration of emancipation, and to enter an order denying the petition. This opinion shall become final five days from the date of filing. (Cal. Rules of Court, rule 24(b)(3).)

Huffman, J., and Haller, J., concurred.